IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE MC-1,

      Plaintiff,

v.

THE UNIVERSITY OF MICHIGAN,
AND THE REGENTS OF THE
UNIVERSITY OF MICHIGAN
(official capacity only),

      Defendants.

_____/

Case No. 2:20-CV-10568

Hon. Paul D. Borman
Hon. Elizabeth A. Stafford

## PLAINTIFF JOHN DOE MC-1'S EMERGENCY MOTION FOR LEAVE TO TAKE THE DEPOSITION AND PRESERVE THE TESTIMONY OF TOM EASTHOPE PRIOR TO THE PARTIES' FED. R. CIV. P. 26(f) CONFERENCE

## ORAL ARGUMENT REQUESTED

Plaintiff, John Doe MC-1 ("Plaintiff"), by and through his attorneys, Michael A. Cox, Jackie Cook and The Mike Cox Law Firm, PLLC, as well as David J. Shea and Shea Law Firm PLLC, and for his Emergency Motion for Leave to Take the Deposition and Preserve the Testimony of Tom Easthope Prior to the Parties' Fed. R. Civ. P. 26(f) Conference, pursuant to Federal Rules of Civil Procedure 26(d)(1) and 30(a)(2)(A)(iii), states as follows:

     1.    Plaintiff filed his Complaint along with the other plaintiffs who have

1

sued the University of Michigan ("UM") and the Regents of the University of Michigan ("Regents"), collectively referred to as "Defendants," for the horrific sexually abusive acts committed by former UM physician Robert Anderson ("Anderson") against UM's own student athlete plaintiffs.

2.     UM is responsible for Plaintiff's damages stemming from Anderson's sexual assaults on UM's campus, as UM placed vulnerable student athletes, like Plaintiff, in Anderson's care despite knowing he was a sexual predator.

3.     This is a civil action against Defendants for declaratory, injunctive, equitable, and monetary relief for injuries sustained by Plaintiff as a result of the acts, conduct, and omissions of Defendants in their official capacity, and their respective employees, representatives, and agents relating to sexual assault, abuse, molestation, and nonconsensual sexual touching and harassment by Anderson against Plaintiff while a UM student.

4.     On November 6, 2018, UM Public Safety and Security Detective Mark West interviewed Tom Easthope, UM's former Vice President of Student Life. After West told Easthope that he was investigating inappropriate behavior between Anderson and a patient, Easthope told West, "I bet there are over 100 people that could be on that list."

5.     Easthope stated, among other things, that he fired Anderson from UM's Student Health Services ("UHS") "40-50 years ago" for "fooling around in the exam

2

room with boy patients."

6.     Easthope, who is 87 years old, is one of very few living former UM administrators with personal knowledge, from as early as 1979, of Anderson's abuse and is still alive to testify to central topics to this litigation including, among other things: (1) Easthope's discussion(s) with Anderson in which only he and Anderson participated; (2) the reasons Easthope believed Anderson should be fired from UM; (3) the reasons Easthope believed there were so many survivors of Anderson's abuse; (4) how Easthope knew that Anderson "fool[ed] around in the exam room with boy patients;" (5) what Easthope did to apprise responsible persons at UM of Anderson's conduct; (6) Defendants' failure to act on and/or investigate complaints against Anderson; (7) Anderson's transfer to the Athletic Department instead of termination from UM as Easthope attempted; (8) Easthope's knowledge of the Defendants' publishing in the President's Annual Report false information that Anderson resigned, rather than was fired from UHS by Easthope; (9) Defendants' concealment of Anderson's abuse; and (10) that Anderson was a "big shot" at UM, and so former Athletic Director Don Canham "worked out a deal" to move Anderson full-time to the Athletic Department after being fired by Easthope.

7.     Last year West noted in his report that there are at least 18 UM administrative, medical, and sports figures, "people with a connection" with Anderson, who are now deceased and cannot be interviewed.  Indeed, Anderson

3

himself is also deceased.

8.    Plaintiff moves under Federal Rules of Civil Procedure 26(d)(1) and 30(a)(2)(A)(iii) for expedited discovery to take the deposition of this crucial witness, Easthope, to preserve his testimony before the parties' Rule 26(f) conference and within 14 days of an Order granting this Motion.

9.    Plaintiff's motion should be granted for the following three reasons:

   a.  Easthope has essential evidence or unique knowledge that is critical to the case and that cannot be obtained from other witnesses because many of them are already deceased.[1]

   b.  Easthope's advanced age of 87 years old justifies an early deposition to preserve his testimony.[2]

   c.  Defendants will not be prejudiced by Easthope's early deposition

---

[1] *See United States v. Int'l Longshoremen's Ass'n*, No. 07-CV-053212-ILG-VVP, 2007 WL 2782761, at *1 (E.D.N.Y. Sept. 24, 2007)("essential evidence to provide, and whether there are other sources for that evidence."); *see also Snow Covered Capital, LLC v. Weidner*, No. 19-CV-00595-JAD-NJK, 2019 WL 2648799, at *3 (D. Nev. June 26, 2019)("has unique knowledge or that his testimony will not be duplicative of other deposition testimony."); *see also McNulty v. Reddy Ice Holdings, Inc.*, No. 08-CV-13178, 2010 WL 3834634, at *2 (E.D. Mich. Sept. 27, 2010) (Borman, J.) (the witness' testimony is "critical to the defense in the instant case.").

[2] *In re Chiquita Brands Int'l, Inc.*, No. 07-CV-60821, 2015 WL 12601043, at *6–7 (S.D. Fla. Apr. 7, 2015) ("[T]he age of a proposed deponent is a highly relevant factor in determining whether there is a sufficient reason to perpetuate testimony [when] the preservation request is made … for expedited discovery under Rule 26(d).").

because (i) they had access to him for decades, first as an employee and now as a retiree, and (ii) Easthope voluntarily interviewed with West about Anderson's activities and UM's reaction to those activities in November 2018.[3]

10.    In further support of this Emergency Motion, Plaintiff relies on the attached brief and accompanying exhibits.

11.    As Local Rule 7.1 requires, Plaintiff's counsel contacted Defense counsel on April 15, 2020 to ask whether counsel would concur in this motion.[4] Defense counsel declined to concur in this motion.  On April 16, 2020, Plaintiff's counsel repeated his request to Defense counsel for concurrence in the relief requested in this motion and was once again refused.[5]

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter an Order that Tom Easthope may be deposed before the parties' Rule 26(f) conference and within 14 days of entry of the Order or as soon as the witness may be served with a subpoena and/or deposition notice and his appearance at the deposition scheduled.

---

[3] *See Snow Covered Capital,* 2019 WL 2648799, at *3 ("The prejudice from conducting a blind deposition is heightened by the shortened notice to opposing counsel of the deposition…").

[4] **Exhibit 1**: Cox to Bush and Linkous email, 4/15/2020, 7:48 pm.

[5] **Exhibit 2**: Cox to Bush and Linkous email, 4/16/2020, 12:25 pm, and Bush Response to Cox, 4/16/2020, 1:55 pm.

Respectfully submitted,

**The Mike Cox Law Firm, PLLC**

By /s/ Michael A. Cox
Michael A. Cox (P43039)
Jackie J. Cook (P68781)
Attorneys for Plaintiff
17430 Laurel Park Drive North, Suite 120E
Livonia, MI 48152
Dated: April 17, 2020          Telephone: (734) 591-4002

**Shea Law Firm PLLC**

By /s/ David J. Shea
David J. Shea (P41399)
Attorneys for Plaintiff
26100 American Dr., Ste. 200
Southfield, MI 48034
Telephone: (248) 354-0224
Dated: April 17, 2020          david.shea@sadplaw.com

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE MC-1,

     Plaintiff,

v.

THE UNIVERSITY OF MICHIGAN,
AND THE REGENTS OF THE
UNIVERSITY OF MICHIGAN
(official capacity only),

     Defendants.

_____/

Case No. 2:20-CV-10568

Hon. Paul D. Borman
Hon. Elizabeth A. Stafford

**BRIEF IN SUPPORT OF PLAINTIFF JOHN DOE MC-1'S EMERGENCY
MOTION FOR LEAVE TO TAKE THE DEPOSITION AND PRESERVE
THE TESTIMONY OF TOM EASTHOPE PRIOR TO THE PARTIES'
<u>FED. R. CIV. P. 26(f) CONFERENCE</u>**

## CONCISE STATEMENT OF ISSUE PRESENTED

Tom Easthope, UM's former Vice President of Student Life, who is 87 years old, is one of very few living former UM administrators with personal knowledge, from as early as 1979, of Dr. Robert Anderson's abuse and is still alive to testify to critical topics to this litigation such as Anderson's sexual abuse of hundreds of male students, Defendants' concealment of that abuse, and Defendants' failure to act on and/or investigate complaints against Anderson.

At least three reasons justify expediting discovery to take Easthope's deposition. *First,* Easthope has essential evidence or unique knowledge that is critical to the case that cannot be obtained from other witnesses because most, if not all, of them are already deceased. *Second*, Easthope's advanced age of 87 years old alone justifies an early deposition to preserve his testimony. *Third*, Defendants will not be prejudiced by Easthope's early deposition because (a) they had access to him for decades, first as an employee and now as a retiree, and (b) Easthope voluntarily interviewed with UM Public Safety and Security Detective West about Anderson's activities and UM's reaction to those activities in November 2018.

Under these circumstances, should the Court, pursuant to Federal Rules of Civil Procedure 26(d)(1) and 30(a)(2)(A)(iii), enter an Order expediting discovery allowing Plaintiff to take Easthope's deposition before the parties' Rule 26(f) conference and within 14 days of entry of its Order?

Plaintiff answers "Yes."

Defendants answer "No."

This Court should answer "Yes."

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Fed. R. Civ. P. 26(d)(1)

Fed. R. Civ. P. 30(a)(2)(A)(iii)

*McNulty v. Reddy Ice Holdings, Inc.*, No. 08-CV-13178, 2010 WL 3834634 (E.D. Mich. Sept. 27, 2010) (Borman, J.)

*In re Chiquita Brands Int'l, Inc.*, No. 07-CV-60821, 2015 WL 12601043 (S.D. Fla. Apr. 7, 2015)

## STATEMENT OF RELEVANT FACTS

UM has known for decades that former UM physician Robert Anderson was sexually abusing male student athletes under the guise of medical treatment and did nothing about it. Because UM took no action to investigate the complaints from students that began as early as 1968 and took no corrective actions even after Tom Easthope's attempted firing of Anderson in 1979, UM allowed Anderson to continue assaulting, abusing and molesting students and student-athletes for decades.

I.    **A July 2018 complaint from a former UM student athlete to current Athletic Director Warde Manuel prompted UM Public Safety and Security Detective Mark West to investigate Anderson's sexual abuse of UM's male student athletes.**

Over 20 months ago, on July 18, 2018, according to UM Public Safety and Security Detective Mark West, a former UM student-athlete wrestler named Tad DeLuca, who attended UM between 1972 and 1976, mailed a letter to current UM Athletic Director Warde Manuel complaining that DeLuca was sexually abused during the course of medical treatments by Anderson.[6] "Manual (sic) then forwarded this letter to representatives at the *University of Michigan General Counsel's office*, who forwarded the letter to [UM's Office of Institutional Equity ("OIE")], ..."[7]

---

[6] **Exhibit 3**: Excerpt from Report of UM Public Safety Det. Mark West, Case No. 1890303861, 10/3/2018, 11:26 am, at WCP000006-9.

[7] **Exhibit 3**: Excerpt from Report of UM Public Safety Det. Mark West, Case No. 1890303861, 10/3/2018, 11:26 am, at WCP000003.

On October 3, 2018, West began investigating DeLuca's allegations against Anderson.[8]   Between October 3, 2018 and November 6, 2018, among other things, West: (1) interviewed Deluca and confirmed his allegations against Anderson;[9]  (2) learned from DeLuca that other sports athletes, including football players and cross-country runners called Anderson, "Dr. Drop your drawers Anderson;"[10]  (3) interviewed Anderson's successor at the Student Health Services (previously known as UHS), Dr. Ernst, who told West "he (Dr. Ernst) has heard rumors about Dr. Anderson throughout his years, one being he performed more exams on males than necessary;"[11] and (4) interviewed another former wrestler who told West that Anderson masturbated the wrestler during medical examinations.[12]

**II.   Detective West discovered that Tom Easthope, a retired UM administrator, was a key witness because Easthope fired Anderson as director of UM's Health Services in 1979 after learning that Anderson sexually abused boy patients during his physical exams.**

On November 6, 2018, West interviewed Easthope.  Easthope was the Vice President of Student Life at UM, and so supervised Anderson while Anderson was

---

[8] *Id.*

[9] **Exhibit 3**: Excerpt from Report of UM Public Safety Det. Mark West, Case No. 1890303861, 10/8/2018, 11:46 am, at WCP000004.

[10] *Id.*

[11] **Exhibit 3**: Excerpt from Report of UM Public Safety Det. Mark West, Case No. 1890303861, 10/8/2018, 11:46 am, at WCP000005.

[12] **Exhibit 3**: Excerpt from Report of UM Public Safety Det. Mark West, Case No. 1890303861, 10/16/2018, 8:33 am, at WCP000011.

the director of UM's UHS.  After West told Easthope that he was investigating inappropriate behavior between Anderson and a patient, Easthope told West, "I bet there are over 100 people that could be on that list."[13]  Easthope described Anderson as a "big shot" at UM, while Easthope was then still fairly new in his position.[14] Easthope told West that he remembered a local activist approached him 40-50 years ago and told him that several people that were in the gay community said to the activist that they were assaulted by Anderson.[15]  Easthope remembered that "fooling around with boys in the exam rooms" was the phrase the activist used.[16]

Easthope also told West that he fired Anderson from UHS for "fooling around in the exam room with boy patients."[17]

Within a day or two after the Easthope interview, *West told the UM's General Counsel's office about his investigation into Anderson:*  "A couple of days later (after 11/5/18) Associate General Counsel Diane [sic] Winiarski contacted me to ask what I was looking for in reference to Dr. Robert Anderson. I explained about his demotion from Health Services, and about the senior University official was able to

---

[13] **Exhibit 3**: Excerpt from Report of UM Public Safety Det. Mark West, Case No. 1890303861, 11/6/2018 10:56 am, at WCP000017.

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

tell me of his release 'due to fooling around with boys in the exam rooms.'"[18] Thus, UM's General Counsel knew about the investigation into Anderson's abuse of male student athletes in November 2018, that Easthope was a key witness, and was able to prepare for this eventual case since then.

## III.  UM fraudulently concealed (with Anderson's assent) Anderson's predatory sexual conduct against student male athletes.

Despite the fact that Easthope fired Anderson for sexually assaulting male student patients during physical exams in 1979, UM allowed Anderson to continue sexually abusing students by transferring him to UM's Athletic Department to treat student athletes. According to longtime UM athletic trainer Russell Miller, the then Athletic Director, Don Canham, a legendary and powerful figure at the UM, "worked out a deal" to bring Anderson over to the Athletic Department despite Easthope's termination of Anderson.[19] Like Easthope, Canham is an important witness to what and why Anderson was fired at the UHS for sexually predatory conduct, but then foisted on athletes who were required to see him to play and keep their scholarships.  But Canham is now deceased and cannot be questioned.[20]  And

---

[18] **Exhibit 3**: Excerpt from Report of UM Public Safety Det. Mark West, Case No. 1890303861, 11/19/2018, 11:26 am at WCP000051.

[19] **Exhibit 3**: Excerpt from Report of UM Public Safety Det. Mark West, Case No. 1890303861, 11/9/2018, 9:23 am, at WCP000032.

[20] **Exhibit 3**: Excerpt from Report of UM Public Safety Det. Mark West, Case No. 1890303861, 4/23/2019, 1:40 pm, at WCP000084.

so Easthope's importance to the fact-inquiry here – already meaningful on its own merits – is strengthened and heightened.  Easthope is likely to have information on, among other things: (1) Anderson's transfer to the Athletic Department instead of being fired; (2) whatever conversations Easthope may have had with Canham; and (3) what Easthope reported about Anderson's conduct to Canham or other responsible UM officials.

Not only did UM allow Anderson to continue sexually assaulting students, UM failed to warn other students and actually covered up Anderson's assaults.  For instance, UM praised Anderson in the published Acknowledgement preface of Volume III of the annual President's Report of The University of Michigan for 1979-1980:

> The University Health Service staff wish to acknowledge the 11 years of leadership provided by Robert E. Anderson, M.D. In January of 1980, Anderson resigned as Director of the University Health Service to devote more time to his clinical field of urology/andrology and athletic medicine…his many contributions to health care are acknowledged…The University Health Service staff wish to thank Anderson for his years of leadership and to dedicate the Annual Report to him. [21]

As this information came directly from the UHS, a department supervised by Easthope, Easthope is likely to have information about, among other things: (1) who

---

[21] **Exhibit 4**: Excerpt from Volume III of the annual President's Report of The University of Michigan for 1979-1980.

else knew about the firing of Dr. Anderson; (2) who decided to praise Dr. Anderson after the firing for sexually predatory conduct; (3) who decided to publish to the UM community this lie about Anderson's separation from UHS and why?; (4) were Athletic Director Canham or other members or coaches within the Athletic Department told that the publication was a lie.

**III.  Many critical witnesses to Anderson's abuse, UM's failure to investigate, UM's failure to take corrective action, and UM's fraudulent concealment are already deceased.**

During West's investigation of Anderson, he noted at least 18 UM administrative, medical, and sports figures, "people with a connection" with Anderson, who are now deceased and cannot be interviewed. These include former Athletic Director Canham, numerous athletic department officials, the three faculty doctors and the five registered nurses who presumably worked with or around Anderson at Student Health Services (also known as UHS).[22] So, Easthope, who is already 87 years old, is one of very few living former UM administrators and employees with personal knowledge, from as early as the 1970s, of Anderson's abuse and is still alive to testify regarding critical topics in this litigation such as Anderson's sexual abuse of male students; Defendants' executives' concealment of Anderson's sexually abusive acts; failure to act on and/or investigate complaints

---

[22] **Exhibit 3**: Excerpt from Report of UM Public Safety Det. Mark West, Case No. 1890303861, 4/23/19 10:17 am, at WCP000084.

against Anderson; and Easthope's direct conversation(s) with Anderson between only the two of them—of which only Easthope is still living.

## IV. UM is finally forced to go public with Anderson's abuse after 19 months of stalling its disclosure to the public and its former athletes.

Defendants stonewalled any exposure of Anderson's abuse to the public or media, and even the victims of Anderson's abuse.  By way of illustration,  on August 21, 2019, 13 months after DeLuca's letter to Athletic Director Manuel, West received an email from his supervisor that was forwarded from "Dave Masson, general  counsel  for  the  University  of  Michigan."[23] This  email  was  entitled "Anderson's Boys, My Michigan Me-Too Moment, 1971" and was sent three days earlier by Robert Julian Stone, a UM graduate who was sexually assaulted by Anderson in 1971.[24]  West notes in his report that he "was not able to track down" Stone to interview him. [25]

Six months, later in February of 2020, after not hearing from UM about its investigation into Anderson, Stone reached out to *The Detroit News* because he feared UM was doing nothing:  "Stone told the News one of the reasons he came

---

[23] **Exhibit 3**: Excerpt from Report of UM Public Safety Det. Mark West, Case No. 1890303861, 8/22/2019, 1:40 pm, at WCP000085.

[24] **Exhibit 3**: Excerpt from Report of UM Public Safety Det. Mark West, Case No. 1890303861, at WCP000087-89.

[25] **Exhibit 3**: Excerpt from Report of UM Public Safety Det. Mark West, Case No. 1890303861, 1:40 pm, at WCP000085.

forward was that he heard there were other alleged victims and he feared the university and the prosecutor could keep the case open indefinitely, and no one would ever know about the allegations against Anderson."[26] Indeed, UM did not inform the public or its former athletes about the sexual abuse by Anderson until February 19, 2020, 19 hours after *The Detroit News* began asking questions about Anderson.[27]  As Stone noted, "The reason I called (The News) worked…I just wasn't willing to sit here and be stonewalled by these people indefinitely."[28]

## V.   Defendants continue to pursue their intentional strategy to delay any factual investigation into Anderson's abuse.

As explained in more detail in Plaintiff's Response and Brief in Support of its Response to Defendants' Motion to Consolidate Cases and For Ordered Filing of a Master Complaint, filed concurrently with this Emergency Motion, Defendants' strategy is to delay any answer or responsive motion until, at least, September 16, 2020—a full two years and two months after the DeLuca letter and 22 months after West gave the General Counsel's office a briefing on the extent of Anderson's acts on which Plaintiff's Complaint (and currently 37 other complaints) are based.[29]

---

[26] **Exhibit 5:** "UM knew of sex abuse reports against doctor 19 months before going public" Kim Kozlowski, *The Detroit News*, 2/19/2020.

[27] *Id.*

[28] *Id.*

[29] **Exhibit 6**: Bush to Shea and Cox email, 3/18/20, 2:25 pm, with attachment of proposed "Does Tolling Agreement".

Even so, in the interest of comity and professionalism, Plaintiff's counsel offered to Defendants multiple extensions in exchange for a meeting and limited discovery, specifically the deposition of Easthope: "We will grant the additional 60-day extension, subject to a productive, transparent meeting in April, and subject to your client's agreement to limited discovery: the depositions of Tom Easthope and Detective West. Not to be redundant, but this would greatly assist us in settling the case(s)."[30]  Defendants never answered Plaintiff's proposal or responded to Plaintiff's request to depose Easthope.

Defendants also asked for an extension based on the current coronavirus situation[31] even though a Rule 12 motion to dismiss is not fact-dependent and thus can be researched, prepared, and filed remotely based on Plaintiff's currently filed complaint.[32]  Defendants further delayed this matter by filing their Motion to Consolidate even though Plaintiff agreed to the relief stated in motion's caption: consolidation of all plaintiff cases in front of Judge Borman (which was already occurring through *sua sponte* orders of the other judges of the Eastern District) and the filing of a master long-form complaint.[33]  Indeed, Plaintiff even offered to file

---

[30] **Exhibit 7**: Cox to Bush email, 3/19/20, 12:25 pm; *see also* **Exhibit 9**: Cook to Linkous email, 4/2/20 3:39 pm.

[31] **Exhibit 7**: Bush to Cox email, 3/19/20, 7:42 am.

[32] **Exhibit 8**: Cox to Bush email, 3/27/20, 7:07 pm.

[33] **Exhibit 9**: Cook to Linkous email, 4/2/20 3:39 pm, with proposed stipulated

the master long-form complaint within four days.[34]   However, Plaintiff cannot agree to the actual reason for Defendants' actions:   indefinite delay.   *See* Defendants' request for relief at section (e) ("The Court will thereafter set the matter for status conference – at which time, the parties will discuss…the University's time and method of response…) and section (f) ("All prior briefing schedules and response dates in the individual actions are vacated…").

Allowing further delay by Defendants only exacerbates the current unfair advantage enjoyed by Defendants as it relates to both discovery in this litigation, and ultimately, the conduct of any trial.   Defendants knew about the Anderson allegations in July 2018 and spent 19 months conducting internal investigations and fact finding while keeping it a secret from alumni and the public, and more importantly, the student athlete plaintiffs, including Plaintiff, who were abused by Anderson. Defendants know that their *own* investigator, West, over 8 months ago, bemoaned the death of, at least 18 UM employed witnesses who he thought could shed light on the matters at issue here,[35] *and* know that Easthope, a key witness, is well into his Eighties.

When *The Detroit News* exposed the abuse by Anderson on February 19,

---

"Order to Consolidate Cases".

[34] *Id*.

[35] **Exhibit 3**: Excerpt from Report of UM Public Safety Det. Mark West, Case No. 1890303861, 4/23/2019, 1:40 pm, at WCP000084.

2020, Defendants were effectively 19 months ahead of Plaintiff in fact finding and discovery.  And the UM's General Counsel's Office – if not even UM's outside counsel – must have already interviewed Easthope many times already to prepare for this anticipated litigation.[36] At the same time Defendants ignored Plaintiff's request to depose Easthope to stall and stymie Plaintiff's factual case.

## ARGUMENT

Federal Rule of Civil Procedure 26(d)(1) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except ... when authorized by these rules, by stipulation, or by court order."[37]

If, as is the case here, the plaintiff has filed suit but discovery has not commenced under Rule 26(d), because the parties have not conducted a Rule 26(f) conference, then Federal Rule of Civil Procedure 30(a)(2)(A)(iii) allows a party to take a deposition before the parties' Rule 26(f) conference with leave of the Court:

> WHEN A DEPOSITION MAY BE TAKEN. *With Leave.* A party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2): … (A) if the parties have not stipulated to the deposition and: … (iii) the party seeks to take the

---

[36] After receiving no response from Defendants to Plaintiff's request for an early deposition of Easthope, Plaintiff's counsel reached out to Easthope at his two residences to see if he would voluntarily meet with Plaintiff's counsel, as he had with UM.  No response from Easthope was received. *See* **Exhibit 10**: Cox to Easthope letter, 4/2/20, with Federal Express documents.

[37] Fed. R. Civ. P. 26(d)(1).

deposition before the time specified in Rule 26(d), ….[38]

"In reviewing such requests [for a court order authorizing early discovery], courts typically impose a good cause standard. … Good cause may be found where the plaintiff's need for expedited discovery outweighs the possible prejudice or hardship to the defendant."[39] Good cause exists for an early deposition where "there is a danger that the testimony will be lost by delay."[40]  A party's motion for leave to take deposition should be granted where the Court, "weighing all of the circumstances, concludes that the interests of justice support the granting of [the] motion."[41]

## I.    Easthope has essential evidence or unique knowledge that is critical to the case that is not available from other witnesses because they are deceased.

Courts grant leave for early depositions before the parties' Rule 26(f) conference where the witness has essential evidence or unique knowledge that is

---

[38] Fed. R. Civ. P. 30(a)(2)(A)(iii).

[39] *Lashuay v. Delilne*, No. 17-CV-13581, 2018 WL 317856, at *3 (E.D. Mich. Jan. 8, 2018) (**Appendix 1**); *see also Westfield Ins. Co. v. Pavex Corp.*, No. 17-CV-14042, 2017 WL 6407459, at *2 (E.D. Mich. Dec. 15, 2017) ("A party seeking expedited discovery in advance of a Rule 26(f) conference has the burden of showing good cause or need in order to justify deviation from the normal timing of discovery.") (**Appendix 2**).

[40] *Respecki v. Baum*, No. 13-CV-13399, 2013 WL 4584714, at *2 (E.D. Mich. Aug. 28, 2013) (**Appendix 3**).

[41] *McNulty v. Reddy Ice Holdings, Inc.*, No. 08-CV-13178, 2010 WL 3834634, at *2 (E.D. Mich. Sept. 27, 2010) (Borman, J.). (**Appendix 4**).

12

critical to the case and cannot be garnered from other witnesses.[42]

In the *McNulty* case, this Court granted a motion to depose an elderly defendant – a witness who was 13 years younger than Easthope—where "the [first defendant's] only direct response to Plaintiff's claims … rest on [the elderly defendant's] alleged statements."[43] Plaintiff's claims were based on statements that "**involved only the two individuals**" (plaintiff and the elderly defendant).[44] Thus, this Court found "a critical need to take and preserve [the elderly defendant's] testimony."[45]

In this case, Easthope, as the Vice President of Student Life at UM, had supervisory oversight of the UHS and had knowledge that Anderson was "fooling around with boys in the exam room."   Easthope had direct conversations with Anderson, with no one else present, about Anderson's abuse of young men in medical exam rooms (in a manner similar to the conduct alleged in this Complaint),

---

[42] *See United States v. Int'l Longshoremen's Ass'n*, No. 07-CV-053212-ILG-VVP, 2007 WL 2782761, at *1 (E.D.N.Y. Sept. 24, 2007) ("might have essential evidence to provide, and whether there are other sources for that evidence.") (**Appendix 5**); *see also Snow Covered Capital, LLC v. Weidner*, No. 19-CV-00595-JAD-NJK, 2019 WL 2648799, at *3 (D. Nev. June 26, 2019) ("unique knowledge or that his testimony will not be duplicative of other deposition testimony.") (**Appendix 6**); *see also McNulty*, 2010 WL 3834634, at *2 (the witness' testimony is "critical to the defense in the instant case.").

[43] *McNulty*, 2010 WL 3834634, at *2.

[44] *Id*. (emphasis added).

[45] *Id*.

was able to hear Anderson's response or lack of response.  And so Easthope, as in the *McNulty* case, had a conversation with Anderson that "***involved only the two individuals***."  In this way, Easthope possesses essential evidence and unique knowledge of Anderson's abuse of male students, and of UM's cover up of that abuse or, at least, the failure to act on that abuse, that is critical to prove UM's liability based on facts that no other witness will have.

Easthope is the only person who can testify as to what actions he personally took, if any, to report Anderson's activities to other responsible persons at UM and to make sure that Anderson never again had contact with UM students and athletes. Easthope is the only person who is uniquely able to testify to his discussion with Anderson and his reasons why he believed UM should have terminated Anderson as early as 1979—which would have prevented the sexual abuse of many male student athletes at UM, including Plaintiff.

Easthope also has essential evidence and unique knowledge of Defendants' fraudulent concealment, Defendants' failure to carry out their duties to investigate and take corrective action (Count I), Defendants' deliberately exposure of Plaintiff to a dangerous sexual predator (Count II), Defendants' failure to protect Plaintiff from the invasion of bodily integrity through sexual assault, abuse, or molestation (Count III), and Defendants' failure to train and supervise their employees, agents, and/or representatives including Anderson and all faculty and staff (Count IV).

For example, after Easthope thought he fired Anderson, former Athletic Director Canham (now deceased), "worked out a deal" to bring Anderson over to the Athletic Department.[46] Indeed, UM went so far as to overtly and fraudulently conceal (with Anderson's assent) Anderson's predatory sexual conduct against college age males and intentionally conceal the reason for Anderson's termination/demotion, by praising Anderson in the published Acknowledgement preface of Volume III of the annual President's Report.[47]

Easthope can likely testify, as no one else can: (1) that Defendants knew that Easthope fired Anderson for his sexual assaults on male students, and (2) what Easthope knew about Anderson's termination being changed to a written demotion in his human resources file, through the efforts of Canham and other "V.P.s", so that Anderson could go to the Athletic Department. Indeed, Easthope is the only known UM administrator to take Anderson's sexual abuse seriously and attempt to fire him. Thus, as this Court found in the *McNulty* case, this Court should again find "a critical need to take and preserve [Easthope's] testimony."

---

[46] **Exhibit 3**: Excerpt from Report of UM Public Safety Det. Mark West, Case No. 1890303861, 11/9/2018, 9:23 am, at WCP000032 & 4/23/2019, 1:40 pm, at WCP000084.

[47] **Exhibit 4**: Excerpt from Volume III of the annual President's Report of The University of Michigan for 1979-1980.

## II.   Easthope's advanced age of 87 years old justifies an early deposition to preserve his testimony.

"[T]he age of a proposed deponent is a highly relevant factor in determining whether there is a sufficient reason to perpetuate testimony [where] the preservation request is made … for expedited discovery under Rule 26(d)."[48] "Regardless of specific ailments or physical vulnerabilities, advanced age carries an increased risk that a witness will be unavailable at the time of trial; for this reason, a witness of advanced age may be an appropriate subject for preservation testimony."[49]

Easthope, who is 87 years old,  is significantly older than the deponents in the *Penn Mutual*, *Chiquita Brands*, *McNulty,* and *Texaco* cases, where the ages of those deponents – 80, 79, 74, and 71,  respectively, – led those courts to order depositions to preserve the testimony of critical witnesses.[50]

---

[48] *In re Chiquita Brands Int'l, Inc.*, No. 07-60821-CV, 2015 WL 12601043, at *6–7 (S.D. Fla. Apr. 7, 2015) (**79-year-old witness**) (**Appendix 7**).

[49] *Chiquita Brands*, 2015 WL 12601043, at *6–7; *see also Penn Mutual Life Ins. Co v. United States*, 68 F.3d 1371, 1375 (D.C. Cir. 1995) (allowing a Rule 27(a) pre-suit deposition to perpetuate testimony of **80-year old witness** whose age "present[ed] a significant risk that he will be unavailable to testify by the time of trial."); *see also Texaco Inc. v. Borda*, 383 F.2d 607, 609 (3d Cir. 1967) (granting writ of mandamus directing district court to allow Rule 27(a) pre-suit deposition where "It would be ignoring the facts of life to say that a **71-year old witness** will be available, to give his deposition or testimony, at an undeterminable future date") (emphasis added); *see also McNulty*, 2010 WL 3834634, at *1 ("There is a documented significant necessity to take Mr. Corbin's deposition in the near future to preserve his testimony. Mr. Corbin is **74 years old**, but more significantly, suffers from serious medical problems, some life threatening.") (emphasis added).

[50]  While Defendants did not concur to this motion, after an initial refusal to concur,

In the *Chiquita Brands* case, the court viewed the witness' advanced age (79 years) against the backdrop that the litigation was not likely to advance to trial for another two years.[51] By that time, the witness would be 81 years old and "it would be unduly risky to assume that no limitation of age or intervening infirmity might impede the ability of plaintiff's to take [the witness'] deposition testimony in the ordinary course before trial."[52] Therefore, the *Chiquita Brands* court found that the advanced age of the witness— "[r]egardless of specific ailments or physical vulnerabilities"—was alone a sufficient basis to support the taking of expedited deposition testimony from him and granted the plaintiffs' request to take expedited preservation testimony from the witness.[53]

Here, Mr. Easthope, a crucial witness, is already 87 years old. Easthope's age alone is justification for the Court to grant Plaintiff's request for expedited discovery to take Easthope's deposition now in order to preserve his testimony in case he is unavailable for deposition in the ordinary course of discovery or for trial. This justification is strengthened by the exclusive and critical nature of the evidence

---

defense counsel agreed to reconsider Plaintiff's motion, based solely on the age of Mr. Easthope. **Exhibit 2**: Cox to Bush and Linkous email, 4/16/2020, 12:25 pm, and Bush response to Cox, 4/16/2020, 1:55 pm.

[51] *Chiquita Brands*, 2015 WL 12601043, at *7.

[52] *Id*.

[53] *Id*.

that Easthope alone offers toward the establishment of the facts in this litigation.

As set forth above, among other things, Easthope's testimony will include: (1) Easthope's discussion(s) with Anderson in which only he and Anderson participated; (2) the reasons Easthope believed Anderson should be fired from UM; (3) the reasons Easthope believed there were many survivors of Anderson's abuse; (4) how Easthope knew that Anderson "fool[ed] around in the exam room with boy patients;" (5) what Easthope did to apprise responsible persons at UM of Anderson's conduct; (6) Defendants' failure to act on and/or investigate complaints against Anderson; (7) Anderson's transfer to the Athletic Department instead of termination from UM as Easthope attempted to effectuate Anderson's termination; (8) Easthope's knowledge of the Defendants' publishing in the President's Annual Report false information that Anderson resigned, rather than was fired from UHS by Easthope; (9) Defendants' concealment of Anderson's abuse; and (10) that Anderson was a "big shot" at UM, and so former Athletic Director Don Canham "worked out a deal" to move Anderson full-time to the Athletic Department after being fired by Easthope. Given that Easthope is nearly 90 years old now, there is no doubt that there is a significant risk that he will be unavailable at the time of trial and so it appropriate to grant Plaintiffs' request to take expedited testimony from Easthope to preserve crucial and relevant evidence.

**III.    Defendants will not be prejudiced by Easthope's early deposition because they have been investigating Anderson's abuse for 19 months and knew since at least November 6, 2018 that Easthope is a critical witness.**

Defendants will not be prejudiced by Easthope's early deposition as they had access to him for decades, as an employee and retiree, and certainly had access to the subject matter of his possible testimony, since his voluntary witness statement to West on November 6, 2018.[54]  In fact, in contrast to the *Snow Covered Capital* case, UM has greater knowledge about Easthope's potential testimony than Plaintiff's counsel.

Defendants (and their General Counsel) knew about Anderson allegations in July 2018 and spent 19 months conducting internal investigations and fact finding while keeping it a secret from alumni and the public, and more importantly, the student athlete plaintiffs, including Plaintiff, who were abused by Anderson.  Indeed, it is likely that Defendants' General Counsel already interviewed Easthope about his voluntary statements to West and his personal knowledge of the facts of this case in anticipation of this litigation. At the same time Defendants ignored Plaintiff's request to depose Easthope.[55] Additionally, Plaintiff's counsel reached out to

---

[54] *See Snow Covered Capital,* 2019 WL 2648799, at *3 ("The prejudice from conducting a blind deposition is heightened by the shortened notice to opposing counsel of the deposition…").

[55] **Exhibit 7**: Cox to Bush, 3/19/20, 12:25 pm; *see also* **Exhibit 9**: Cook to Linkous email, 4/2/20 3:39 pm.

Easthope for a phone call but received no response from him. Defendants had adequate time to prepare their defense including preparing for the deposition of Easthope and cannot allege any prejudice from an early deposition of Easthope.

## CONCLUSION

Plaintiff respectfully requests that this Honorable Court enter an Order that Mr. Easthope may be deposed within 14 days of entry of the Order or as soon as the witness may be served with a subpoena and/or deposition notice and his appearance at the deposition scheduled.

Respectfully submitted,

**The Mike Cox Law Firm, PLLC**
By /s/ Michael A. Cox
Michael A. Cox (P43039)
Jackie J. Cook (P68781)
Attorneys for Plaintiff
17430 Laurel Park Drive North, Suite 120E
Livonia, MI 48152
Dated: April 17, 2020          Telephone: (734) 591-4002

**Shea Law Firm PLLC**
By /s/ David J. Shea
David J. Shea (P41399)
Attorneys for Plaintiff
26100 American Dr., Ste. 200
Southfield, MI 48034
Telephone: (248) 354-0224
Dated: April 17, 2020          david.shea@sadplaw.com

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 17, 2020, I electronically filed the foregoing document with the Clerk of the Court through the CM/ECF system, which will send notices of electronic filing to all counsel of record.

/s/ Mihaela Iosif
The Mike Cox Law Firm, PLLC
Livonia, MI 48152
