IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE MC-1,

                 Plaintiff,

     v.

THE UNIVERSITY OF MICHIGAN,
THE REGENTS OF THE UNIVERSITY
OF MICHIGAN (official capacity only),

                 Defendants.

_____/

Case No. 20-CV-10568

Hon. Paul D. Borman
Magistrate Judge Elizabeth A. Stafford

## THE UNIVERSITY'S MOTION TO DISMISS

The Regents of the University of Michigan and the University of Michigan (together, the "University") respectfully move, under Federal Rules of Civil Procedure 12(b)(1) and (b)(6), for an order dismissing the complaint.

Plaintiff alleges that he was sexually assaulted many years ago by Robert Anderson, a former University doctor who died in 2008. The University condemns Anderson's misconduct. The University recognizes the harms he caused and is committed to developing a fair, just, timely, and efficient resolution process—one that does not require drawn-out litigation. The University has been engaged in productive conversations with several attorneys representing former students. The University is eager to continue this dialogue as it assesses over the next few

months the best approach to bring closure and resolution to these matters. That process will take time, but it has already begun.

What matters for purposes of this motion, however, is that Plaintiff's lawsuit cannot proceed. *First*, it was filed decades too late. Anderson has been dead for 12 years; he has not been employed by the University for 17 years; and the conduct at issue in Plaintiff's complaint occurred more than 30 years ago. The three-year limitations period—which was neither delayed by a discovery rule nor tolled by alleged fraudulent concealment—has thus long expired. *Second*, the University is a state instrumentality, and sovereign immunity bars all of Plaintiff's claims except those brought under Title IX.

If this case proceeds in any form, however, the "University of Michigan" should be dismissed as an improper defendant. The Regents of the University of Michigan is the body corporate with authority to be sued under law. *See* Mich. Comp. Laws § 390.4.

In support of this Motion, the University relies on the attached brief and exhibits. As Local Rule 7.1 requires, undersigned counsel contacted Plaintiff's counsel on May 1, 2020 to ask whether counsel would concur in the motion. Plaintiff's counsel did not concur in the University's requested relief.

For these reasons, the University respectfully requests that the Court grant its

motion and dismiss Plaintiff's complaint in full.  In the alternative, the University of

Michigan should be dismissed as an improper defendant.

Respectfully submitted,

BUSH SEYFERTH PLLC
*Attorneys for the University*

/s/ *Cheryl A. Bush*
Cheryl A. Bush (P37031)
Stephanie A. Douglas (P70272)
Derek J. Linkous (P82268)
Andrea S. Carone (P83995)
100 W. Big Beaver Rd., Ste. 400
Troy, MI 48084
(248) 822-7800
bush@bsplaw.com

Dated:  May 1, 2020

IN IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE MC-1,

                        Case No. 20-CV-10568

          Plaintiff,

      v.                      Hon. Paul D. Borman
                        Magistrate Judge Elizabeth A. Stafford

THE UNIVERSITY OF MICHIGAN,
THE REGENTS OF THE UNIVERSITY
OF MICHIGAN (official capacity only),

          Defendants.

_____/

**MEMORANDUM IN SUPPORT OF**
**THE UNIVERSITY'S MOTION TO DISMISS**

**STATEMENT OF ISSUES PRESENTED**

Plaintiff seeks damages from the University, a state instrumentality, stemming from sexual assaults by a former University doctor who died in 2008.  Those alleged assaults occurred, at the latest, in 1989.  The issues presented by this Motion are:

I.A.        Are Plaintiff's federal claims barred by the statute of limitations?

| | |
|---|---|
| The University answers: | Yes |
| Plaintiff answers: | No |
| This Court should answer: | Yes |

I.B.        Is Plaintiff's Section 1983 claim barred by the University's sovereign immunity?

| | |
|---|---|
| The University answers: | Yes |
| Plaintiff answers: | No |
| This Court should answer: | Yes |

II.         Should the University of Michigan be dismissed as an improper party?

| | |
|---|---|
| The University answers: | Yes |
| Plaintiff answers: | No |
| This Court should answer: | Yes |

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Mich. Comp. Laws § 600.5805(2)

*Owens v. Okure*, 488 U.S. 235 (1989)

*Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838 (6th Cir. 2015)

*Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429 (S.D.N.Y. 2014)

*Guy v. Lexington-Fayette Urban Cty. Gov't*, 488 F. App'x 9 (6th Cir. 2012)

*Doe v. Roman Catholic Archbishop of Archdiocese of Detroit,* 692 N.W.2d 398 (Mich. Ct. App. 2004)

*Evans v. Pearson Enters., Inc.*, 434 F.3d 839 (6th Cir. 2006)

*Stoneman v. Collier*, 288 N.W.2d 405 (Mich. Ct. App. 1979)

*Estate of Ritter by Ritter v. Univ. of Mich.*, 851 F.2d 846 (6th Cir. 1988)

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

PLAINTIFF'S COMPLAINT...................................................................3

LEGAL STANDARD................................................................................5

ARGUMENT ............................................................................................6

I.    PLAINTIFF'S FEDERAL CLAIMS SHOULD BE DISMISSED....................6

    A.   Plaintiff's Title IX and Section 1983 claims are barred by a three-year statute of limitations. .......................................................6

    B.   Plaintiff's Section 1983 claim is also barred by sovereign immunity..................................................................................19

II.   THE UNIVERSITY OF MICHIGAN SHOULD BE DISMISSED. ................20

CONCLUSION .......................................................................................21

## TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Ali v. Univ. of Michigan Health Sys.-Risk Mgmt.*,
  2012 WL 3112419 (E.D. Mich. May 4, 2012) ................................................... 20

*Anderson v. Bd. of Educ. of Fayette Cty.*,
  616 F. Supp. 2d 662 (E.D. Ky. 2009).............................................................. 8, 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................ 5, 16

*B&P Process Equip. & Sys., LLC v. Applied Indus. Techs.*,
  2015 WL 13660565 (E.D. Mich. Feb. 3, 2015) ............................................ 12, 19

*Bd. of Regents of Univ. of State of N.Y. v. Tomanio*,
  446 U.S. 478 (1980)......................................................................................... 6, 12

*Beck v. Park W. Galleries*,
  2016 WL 3653955 (Mich. Ct. App. July 7, 2016) ............................................. 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................. 5

*Bradshaw v. Rawlings*,
  612 F.2d 135 (3d Cir. 1979) ................................................................................ 18

*Carpenter v. Mumby*,
  273 N.W.2d 605 (Mich. Ct. App. 1978)............................................................... 18

*Cataldo v. U.S. Steel Corp.*,
  676 F.3d 542 (6th Cir. 2012) ................................................................................ 5

*Chandler v. Wackenhut Corp.*,
  465 F. App'x 425 (6th Cir. 2012) ........................................................................ 19

*Credit Suisse Securities (USA) LLC v. Simmonds*,
  566 U.S. 221 (2012)............................................................................................ 13

*Doe v. Bishop Foley Catholic High Sch.*,
  2018 WL 2024589 (Mich. Ct. App. May 1, 2018)........................................ 13, 17

*Doe v. Kipp DC Supporting Corp.*,
  373 F. Supp. 3d 1 (D.D.C. 2019)......................................................................... 11

*Doe v. Pasadena Hosp. Ass'n, Ltd.*,
  2020 WL 1529313 (C.D. Cal. Mar. 31, 2020) .............................................. 11, 14

*Doe v. Roman Catholic Archbishop of Archdiocese of Detroit*,
  692 N.W.2d 398 (Mich. Ct. App. 2004).........................................................Passim

*Doe v. Univ. of S. Cal.*,
  2019 WL 4228371 (C.D. Cal. Apr. 18, 2019)........................................ 10, 11, 14

iv

*Edelman v. Jordan*,
   415 U.S. 651 (1974)............................................................................... 20
*Estate of Ritter by Ritter v. Univ. of Mich.*,
   851 F.2d 846 (6th Cir. 1988).............................................................. 20
*Evans v. Pearson Enters., Inc.*,
   434 F.3d 839 (6th Cir. 2006) ....................................................... 15, 16
*Freeman v. Busch*,
   349 F.3d 582 (8th Cir. 2003) ............................................................. 18
*Gilley v. Dunaway*,
   572 F. App'x 303 (6th Cir. 2014) ........................................................ 7
*Gourd v. Indian Mountain Sch., Inc.*,
   2020 WL 1244920 (D. Conn. Mar. 16, 2020) .................................... 14
*Green v. City of Southfield*,
   759 F. App'x 410 (6th Cir. 2018) ........................................................ 6
*Guy v. Lexington-Fayette Urban County Government*,
   488 F. App'x 9 (6th Cir. 2012) ........................................................... 7
*Helm v. Eells*,
   642 F. App'x 558 (6th Cir. 2016) ........................................................ 9
*Irrer v. Milacron, Inc.*,
   2006 WL 2669197 (E.D. Mich. Sep. 18, 2006) ................................. 17
*Johnson v. Johnson*,
   2013 WL 2319473 (Mich. Ct. App. May 28, 2013)............................ 16
*Johnson v. Memphis Light Gas & Water Div.*,
   777 F.3d 838 (6th Cir. 2015) .......................................................... 8, 9
*King-White v. Humble Ind. Sch. Dist.*,
   803 F.3d 754 (5th Cir. 2015) ....................................... 6, 11, 15, 18
*Kreipke v. Wayne State Univ.*,
   807 F.3d 768 (6th Cir. 2015) ............................................................. 20
*Lillard v. Shelby Cty. Bd. of Educ.*,
   76 F.3d 716 (6th Cir. 1996) ................................................................ 6
*McDonough v. Smith*,
   139 S. Ct. 2149 (2019)........................................................................ 6
*Myers v. U.S.*,
   526 F.3d 303 (6th Cir. 2008) .............................................................. 5
*Order of Railroad Telegraphers v. Ry. Express Agency*,
   321 U.S. 342 (1944)............................................................................. 2
*Owens v. Okure*,
   488 U.S. 235 (1989)............................................................................. 6
*Owner-Operator Indep. Drivers Ass'n, Inc. v. Comerica Bank*,
   562 F. App'x 312 (6th Cir. 2014) ........................................................ 8

*Puckett v. Lexington-Fayette Urban Cty. Gov't*,
    833 F.3d 590 (6th Cir. 2016) .................................................................. 5
*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
    506 U.S. 139 (1993) ............................................................................ 19
*Republic Bank & Tr. Co. v. Bear Stearns & Co.*,
    683 F.3d 239 (6th Cir. 2012) .......................................................... 5, 16
*Rotella v. Pederson*,
    144 F.3d 892 (5th Cir. 1998) ............................................................. 18
*Rotella v. Wood*,
    528 U.S. 549 (2000) .............................................................................. 8
*Rotkiske v. Klemm*,
    140 S. Ct. 355 (2019) ........................................................................... 8
*Sossamon v. Texas*,
    563 U.S. 277 (2011) ......................................................................... 2, 4
*Squeri v. Mount Ida Coll.*,
    954 F.3d 56 (1st Cir. 2020) ............................................................... 18
*Stoneman v. Collier*,
    288 N.W.2d 405 (Mich. Ct. App. 1979) ............................................ 19
*The Reserve at Heritage Vill. Ass'n v. Warren Fin. Acquisition, LLC*,
    850 N.W.2d 649 (Mich. Ct. App. 2014) ............................................ 13
*Thomas v. Noder-Love*,
    621 F. App'x 825 (6th Cir. 2015) ...................................................... 20
*Twersky v. Yeshiva Univ.*,
    579 F. App'x 7 (2d Cir. 2014) ........................................................... 11
*Twersky v. Yeshiva Univ.*,
    993 F. Supp. 2d 429 (S.D.N.Y. 2014) ............................... 7, 10, 11, 18
*Valente v. Univ. of Dayton*,
    438 F. App'x 381 (6th Cir. 2011) ...................................................... 18
*Varnell v. Dora Consol. Sch. Dist.*,
    756 F.3d 1208 (10th Cir. 2014) ....................................................... 7, 9
*Wallace v. Kato*,
    549 U.S. 384 (2007) .............................................................................. 7
*Wood v. Carpenter*,
    101 U.S. 135 (1879) .............................................................................. 2

## Statutes

Mich. Comp. Laws § 390.4 ..................................................................... 20
Mich. Comp. Laws § 600.5805(2) ............................................................ 6
Mich. Comp. Laws § 600.5855 ............................................................... 12

## **<u>Rules</u>**

Fed. R. Civ. P. 9(b) ........................................................................... 5, 15

Fed. R. Civ. P. 12(b)(6)......................................................................... 5

## INTRODUCTION

The University of Michigan is confronting through credible allegations the sad reality that some of its students suffered sexual abuse at the hands of one of its former employees.  In particular, the University has learned that Robert Anderson, a former University doctor who died in 2008, sexually assaulted students. The University is determined to acknowledge and reckon with that past and, to the extent possible, provide justice—including in the form of monetary relief—to Anderson's survivors.

The University has commissioned an independent, outside law firm to investigate the allegations against Anderson and the University's knowledge of that conduct and the harms that resulted.  And it has encouraged, through broad outreach efforts, survivors to participate and be confidentially interviewed by an investigating law firm.[1]  Once that firm determines, in its own professional judgment, that its investigation is complete, it will issue a non-privileged report to the Regents and the public simultaneously.  The University is committed to grappling with those findings, whatever they may be, to ensure that nothing like this can ever happen again.  The University has further announced its commitment to assessing over the

---

[1] The University also has encouraged survivors to receive free confidential counseling through a national counseling firm with extensive experience facilitating confidential and sensitive support services.

next few months a fair, just, timely, and efficient resolution process for the former patients he harmed—one that does not require drawn-out litigation.

Plaintiff's lawsuit, however, cannot proceed for two fundamental reasons.

*First*, Plaintiff's claims—which involve a perpetrator who has been dead for 12 years, who has not been employed by the University for 17 years, and who assaulted him decades ago—are barred by the three-year statute of limitations.

Limitations periods are fundamental to the operation of courts, "vital to the welfare of society," and provide "security and stability to human affairs." *Wood v. Carpenter*, 101 U.S. 135, 139 (1879). And they "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Order of Railroad Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348–49 (1944). As numerous other courts have recognized in dismissing similar claims, those policies preclude recovery for sexual misconduct that occurred in decades past.

*Second*, with the exception of Plaintiff's Title IX claim, basic principles of sovereign immunity foreclose his lawsuit. "Sovereign immunity principles enforce an important constitutional limitation on the power of the federal courts" by protecting state instrumentalities like the University of Michigan from suits for money damages. *Sossamon v. Texas*, 563 U.S. 277, 284 (2011). Although Title IX abrogates sovereign immunity, the rest of Plaintiff's lawsuit must yield to that limit.

The University does not here question Plaintiff's claim that Anderson abused him or the harm he suffered as a result.  Indeed, the University stands ready to compensate Plaintiff through a resolution approach it will be developing in the coming months.[2]  But the statutes of limitations and sovereign immunity prevent him from recovering damages in court.  Plaintiff's complaint should be dismissed.

## PLAINTIFF'S COMPLAINT

Robert Anderson worked for the University of Michigan from 1966 to 2003—first for the University Health Service and later for the Athletic Department. ECF No. 5, Compl. ¶¶ 22–23, 53.[3]  According to the complaint, Plaintiff Doe MC-1 came to the University of Michigan on a wrestling scholarship in 1984.  *Id.* ¶ 68. Plaintiff alleges that, between 1984 and 1989, he saw Anderson approximately 50 times (roughly 10 visits a year); he estimates he was assaulted on at least 35 of those visits.  *Id.* ¶¶ 71–74, 89.  Although Plaintiff never saw Anderson for issues related to his genitals or anus, he alleges that the assaults included nonconsensual digital anal penetration and genital fondling.  *Id.* ¶¶ 84–85.  Anderson's "treatments made

---

[2]  The University is engaged in productive conversations with a number of attorneys representing former patients.  The University is eager to continue this dialogue as it assesses over the next few months the best approach to bring closure and resolution to these matters.  That process will take time, but it has already begun. *See* Apr. 28, 2020 Announcement (available at: https://record.umich.edu/articles/university-will-create-process-for-resolving-anderson-claims/).

[3]  Unless otherwise noted, all emphases and alterations are added, and all internal quotation marks, citations, and footnotes are omitted.

Plaintiff uncomfortable," *id.* ¶ 87, and Plaintiff believed that Anderson's treatment was "odd or weird," *id.* ¶ 104–05.   Nonetheless, Plaintiff alleges that he was not aware at the time that Anderson's conduct was not medical treatment because he had no medical training and because he was 17 years old when it began.  *Id.* ¶¶ 91–92.

According to Plaintiff, other students told individuals at the University about Anderson's misconduct.  *Id.* ¶¶ 24, 31, 32, 37, 39.   Plaintiff alleges that the University's response was inadequate and that it concealed Plaintiff's cause of action from him.   On this score, he highlights Volume III of the 1979–80 President's Report, where the University "thanked" Anderson and noted his "resign[ation] . . . to devote more time to . . . athletic medicine."  *Id.* ¶ 51.  Plaintiff does not say that he read this Report—much less relied on it—before enrolling at the University years later.  *See generally id.*  Nor does he allege that the Report included representations that could plausibly be understood to comment on or conceal any "odd," "weird," or "uncomfortable" conduct by Anderson during exams.  *See id.* ¶¶ 87, 104–05.

Plaintiff alleges that he first realized he had a possible cause of action when he read a newspaper article about Anderson on or about February 19, 2020.  *Id.* ¶ 123.  He filed his complaint on March 5, 2020.  This Court declined supplemental jurisdiction over the state-law claims on March 10, 2020.  ECF No. 6.

## LEGAL STANDARD

A motion to dismiss takes non-conclusory allegations as true and asks whether, assuming the truth of such allegations, a plaintiff has stated a plausible claim for relief. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). For a complaint to survive, the Court, drawing on its "judicial experience and common sense," must be able to reasonably infer from "well-pleaded facts" that the plaintiff's entitlement to relief is plausible. *Iqbal*, 556 U.S. at 678–79. When "a complaint pleads facts that are merely *consistent* with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief," and dismissal is required. *Id.* at 556. Moreover, allegations of fraud must be pleaded with particularity—that is, the plaintiff must specifically allege the "who, what, when, where, and how" of the claimed fraudulent statement or omission. *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 255–56 (6th Cir. 2012); *see* Fed. R. Civ. P. 9(b).

Legal defenses like untimeliness and immunity are properly considered at the motion-to-dismiss stage. *See, e.g.*, *Myers v. U.S.*, 526 F.3d 303, 305–06 (6th Cir. 2008) (untimeliness); *Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 599 (6th Cir. 2016) (immunity). In particular, a limitations dismissal is warranted where, as here, "the allegations in the complaint affirmatively show that the claim is time-barred." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012).

**ARGUMENT**

**I.    PLAINTIFF'S FEDERAL CLAIMS SHOULD BE DISMISSED.**

Plaintiff attempts to plead two types of federal claims: a Title IX claim and Section 1983 claims.  All are time-barred.  The Section 1983 claims also fail on sovereign-immunity grounds.

**A.    Plaintiff's Title IX and Section 1983 claims are barred by a three-year statute of limitations.**

**1.    The statute of limitations for Plaintiff's federal claims is three years.**

When a federal statute does not provide a statute of limitations, courts "borrow[] . . . the state law of limitations governing an analogous cause of action." *Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 483–84 (1980). "[C]ourts considering § 1983 claims should borrow the general or residual statute for personal injury actions."  *Owens v. Okure*, 488 U.S. 235, 250 (1989).  The same is true of Title IX.  *See Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 729 (6th Cir. 1996); *accord King-White v. Humble Ind. Sch. Dist.*, 803 F.3d 754, 759 (5th Cir. 2015) (collecting cases).  That means the three-year statute of limitations found in Mich. Comp. Laws § 600.5805(2) applies to all of Plaintiff's federal claims. *See Green v. City of Southfield*, 759 F. App'x 410, 414 (6th Cir. 2018).

**2.    That limitations period began to run decades ago.**

The "accrual date of a federal cause of action is a matter of federal law."  *King-White*, 803 F.3d at 762; *see also McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019).

6

The "standard rule" is that accrual occurs—and the limitations period begins to run—"when the plaintiff has a complete and present cause of action." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Therefore, Section 1983 and Title IX claims based on allegations of sexual assault accrue at the time of the assault itself. *See, e.g.*, *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1215 (10th Cir. 2014); *Gilley v. Dunaway*, 572 F. App'x 303, 308 (6th Cir. 2014); *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 442 (S.D.N.Y. 2014), *aff'd*, 579 F. App'x 7 (2d Cir. 2014).

Plaintiff's claims accrued—at the latest—in 1989, when he last saw Anderson. *See* Compl. ¶¶ 71–73.

Allegations that the University failed to report Anderson's abuse of others do not result in a later accrual date. In *Guy v. Lexington-Fayette Urban County Government*, 488 F. App'x 9 (6th Cir. 2012), the Sixth Circuit rebuffed the plaintiffs' efforts to restyle their injury as the county's "failure to report" alleged abuse. *Id.* at 15. The abuse itself, the court emphasized, was "the injury that [gave] rise to plaintiffs' claims." *Id.* The limitations period began to run when the abuse occurred. So too here.

### 3.   The discovery rule did not delay the accrual of Plaintiff's claims.

Where a "discovery rule" applies, a claim accrues only when the plaintiff discovers or reasonably should have discovered his injury. The discovery rule does not apply here but, even if it did, it did not postpone the accrual of Plaintiff's claim.

As an initial matter, the U.S. Supreme Court has cast doubt on the application of a federal discovery rule unless specifically *mandated* by statute.  *See Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019) (explaining that courts should not "read in" a discovery rule to statutes of limitations; rejecting an "expansive approach to the discovery rule").  There is no such mandate here.

Regardless, when applying a discovery rule, the Supreme Court "ha[s] been at pains to explain that" the limitations period begins to run upon "discovery of the injury, not discovery of the other elements of a claim."  *Rotella v. Wood*, 528 U.S. 549, 555 (2000); *see also Anderson v. Bd. of Educ. of Fayette Cty*., 616 F. Supp. 2d 662, 668 (E.D. Ky. 2009) (A claim "accrues when [the plaintiff] discovers that he has been injured, *not* when he determines that the injury was unlawful.").

Moreover, under a discovery rule, the limitations period begins when a person "has *reason* to know of his injury"—even if he does not actually learn about the injury until later on.  *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015); *see Owner-Operator Indep. Drivers Ass'n, Inc. v. Comerica Bank*, 562 F. App'x 312, 319 (6th Cir. 2014) (explaining that the discovery rule is triggered when the plaintiff acquires inquiry notice).  "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence."  *Johnson*, 777 F.3d at 843.

8

This is an objective inquiry. *Id.* That is, courts do not ask whether a plaintiff in fact *knew* about his injury, but rather whether the "event" at issue—here, the sexual abuse—"should have alerted the typical lay person to protect his or her rights." *Helm v. Eells*, 642 F. App'x 558, 561 (6th Cir. 2016).

Here, the allegations in the complaint establish that Plaintiff was aware of his injury—or could have discovered it through reasonable diligence—at the time the assaults occurred. According to the complaint, "[n]ot once did Plaintiff see Anderson for issues related to his genitals or anus; yet most of the times," Plaintiff was made to "drop his pants." Compl. ¶ 85. Plaintiff alleges that these "treatments made [him] uncomfortable," *id.* ¶ 87, and that he thought Anderson's treatment was "odd or weird," *id.* ¶ 104–05. Plaintiff also alleges that Anderson told Plaintiff that he "should not question and/or report [Anderson's] conduct to appropriate authorities," *id.* ¶ 115(e)—a statement that would give the "typical layperson" every reason to expect wrongdoing. *See Varnell*, 756 F.3d at 1216 (rejecting delayed discovery where plaintiff alleged, *inter alia*, abuser told plaintiff "not to tell anyone"). Plaintiff affirmatively alleges that other students—including scholarship athletes like Plaintiff—knew of their own injuries from Anderson's abuse at the time it was happening. *See* Compl. ¶¶ 31–32.

Even if a discovery rule applied, the allegations in Plaintiff's complaint conclusively establish that Plaintiff was at least on inquiry notice that he had been

injured at the time the abuse occurred.  And this Court can reasonably infer that such notice would have only increased in the intervening years, when Plaintiff presumably obtained medical treatment that did *not* involve the kind of inappropriate, uncomfortable, odd, and weird conduct Anderson initiated.  *See, e.g.*, *Doe v. Univ. of S. Cal.*, 2019 WL 4228371, at *3 (C.D. Cal. Apr. 18, 2019) ("Plaintiff undoubtedly had further gynecological examinations . . . over the 27 years since and would have had a basis to conclude that Dr. Tyndall's conduct fell outside of medically acceptable standards.").

Other courts applying these principles to similar facts have dismissed analogous claims as untimely.  In *Twersky*, for example, a group of former high school students brought claims stemming from abuse that occurred between 1971 and 1992.  *See* 993 F. Supp. 2d at 432.  The plaintiffs, who filed suit in July 2013 after a newspaper reported on abuse at the high school, argued that there was a delayed accrual under the discovery rule.  *Id.* at 436–37.  The court rejected that view and explained that, under the federal discovery rule, the limitations period "begins to run when the plaintiff has inquiry notice of his injury, namely when he discovers or reasonably should have discovered the injury."  *Id.* at 439.  And it rejected plaintiffs' contention that the news article triggered the discovery of their claims, holding that the plaintiffs knew or should have known of their injury at the time the abuse occurred.  *Id.* at 440.  The district court therefore granted dismissal,

*id.* at 452, and the Second Circuit affirmed. *See Twersky v. Yeshiva Univ.*, 579 F. App'x 7 (2d Cir. 2014).

Court after court has applied a similar analysis to dismiss claims involving sexual abuse that occurred outside the statute of limitations. For example:

- *Doe v. Pasadena Hosp. Ass'n, Ltd.*, 2020 WL 1529313, at *5 (C.D. Cal. Mar. 31, 2020) – Finding that the plaintiff had "reason to suspect . . . wrongdoing, causation, and harm" at the time abusive gynecological examinations occurred.

- *Doe v. USC*, 2019 WL 4228371, at *4 – "The fact that Plaintiff only learned [in 2018] that she was not the only female patient abused by Dr. Tyndall [during a gynecological exam] does not affect Plaintiff's knowledge of the abuse she received back in 1991."

- *Doe v. Kipp DC Supporting Corp.*, 373 F. Supp. 3d 1, at *8 (D.D.C. 2019) – Holding that the discovery rule did not delay accrual of a claim where a survivor of sexual abuse "recall[ed] that abuse but d[id] not appreciate its wrongfulness" at the time.

- *King-White*, 803 F.3d at 762, 764 – Rejecting discovery-rule accrual where the survivor was "was sadly quite aware of the abuse she suffered" at the time of her abuse, but did not file until her suit until four years later.

The same result is required here. Plaintiff's claims accrued and the statute of limitations began to run at the latest in 1989.

### 4. Fraudulent-concealment tolling does not apply.

Just as the discovery rule did not delay the beginning of the limitations period on Plaintiff's claims, fraudulent concealment did not delay that period's expiration. Unlike accrual, fraudulent-concealment tolling is governed by state law, even for

federal claims.  *See Tomanio*, 446 U.S. at 485.  Michigan's fraudulent-concealment tolling law provides:

> *If a person* who is or may be liable for any claim *fraudulently conceals the existence of the claim* or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the *action may be commenced at any time within 2 years after* the person who is entitled to bring the action discovers, or *should have discovered*, *the existence of the claim* or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

Mich. Comp. Laws § 600.5855.  "Courts are to strictly construe and narrowly apply the fraudulent concealment exception." *B&P Process Equip. & Sys., LLC v. Applied Indus. Techs.*, 2015 WL 13660565, at *3 (E.D. Mich. Feb. 3, 2015).

"Fraudulent concealment means employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action." *Doe v. Roman Catholic Archbishop of Archdiocese of Detroit*, 692 N.W.2d 398, 405 (Mich. Ct. App. 2004).  "[S]ilence" is not enough to establish fraudulent concealment; instead, the defendant's allegedly concealing acts must be "affirmative." *Id*. at 406–07.

There are two independent reasons why fraudulent-concealing tolling does not apply here:  (a) fraudulent concealment does not toll the limitations period for an injury that the plaintiff already should have discovered, and (b) Plaintiff's complaint does not adequately plead fraudulent concealment.

12

a.   *Fraudulent concealment cannot toll the limitations period*
     *for an already-discovered claim.*

"It is well established . . . that when a limitations period is tolled because of fraudulent concealment of facts, the tolling ceases when those facts are, *or should have been*, discovered by the plaintiff."   *Credit Suisse Securities (USA) LLC v. Simmonds*, 566 U.S. 221, 226–27 (2012); *see also The Reserve at Heritage Vill. Ass'n v. Warren Fin. Acquisition, LLC*, 850 N.W.2d 649, 665 (Mich. Ct. App. 2014) ("If there is a known cause of action there can be no fraudulent concealment which will interfere with the operation of the statute.").   As explained above, the law requires that Plaintiff knew or reasonably should have known of his injury at the time of his abuse.   *See supra* at I.A.2.   Hence Plaintiff's fraudulent-concealment allegations fail for the same reason his discovery-rule allegations do.

The Michigan Court of Appeals' decision rejecting fraudulent concealment allegations in *Archdiocese of Detroit* is instructive.   There, the plaintiff brought a claim in 2002 for abuse that occurred between 1972 and 1976.   The plaintiff alleged that "he did not discover his claims" until he saw "widespread media coverage" about Catholic clergy abuse and learned that his priest had been criminally prosecuted for abusing another boy.   *Archdiocese of Detroit*, 692 N.W.2d at 401–02.   The Court of Appeals rejected fraudulent-concealment tolling because "[t]he facts that plaintiff alleged in support of his claims were all facts that plaintiff knew or should have known at the time of his injury."   *Id.* at 405–06; *see also Doe v.*

13

*Bishop Foley Catholic High Sch.*, 2018 WL 2024589, at *6 (Mich. Ct. App. May 1, 2018) ("For a cause of action to accrue, the entire theory of the case need not be apparent, nor is certitude required."). The same is true here. Plaintiff had knowledge of the relevant facts at the time of his injury; accordingly, Plaintiff "has failed to allege a claim of fraudulent concealment . . . because [his] causes of action were not concealed from him." *Archdiocese of Detroit*, 692 N.W.2d at 406.

Courts in other jurisdictions have reached the same result under the same or similar fraudulent-concealment standards. In *Doe v. USC*, 2019 WL 4228371 at *5, for example, the court found that "even if USC attempted to conceal Dr. Tyndall's improper behavior for years following Plaintiff's examination," the plaintiff's "own allegations show[ed] that she independently had reason to believe that Dr. Tyndall did not conduct the examination . . . according to accepted medical standards." Likewise, in *Doe v. Pasadena Hospital*, 2020 WL 1529313, at *1, a plaintiff alleged that a doctor had "misrepresent[ed] that his conduct was for a legitimate medical purpose and/or conformed to accepted medical practice." The court nonetheless agreed with the Hospital's argument that "fraudulent concealment d[id] not toll Plaintiff's claims because" the complaint established "actual or presumptive knowledge" of her claims, pointing to, among other allegations, "aggressive and prolonged" and inappropriate examinations that the plaintiff "*suspected . . . [were] strange*." *Id*. at *3–4; *see also, e.g.*, *Gourd v. Indian Mountain Sch., Inc.*, 2020 WL

14

1244920, at *6 (D. Conn. Mar. 16, 2020) (finding that the plaintiff's discovery of his claim precluded fraudulent concealment where the plaintiff knew he "was allegedly sexually abused by" a "teacher while in the School's care"); *King-White*, 803 F.3d at 764–65 (holding that the plaintiff knew or reasonably should have known of the injury sufficient "to end any estoppel effect that would otherwise apply" from fraudulent concealment); *Anderson v. Fayette Cty.*, 616 F. Supp. 2d at 671 (similar).

> b.   *Plaintiff's fraudulent-concealment allegations are inadequate.*

Even if fraudulent concealment could apply here, Plaintiff failed to adequately plead it.  Plaintiff's allegations of fraudulent concealment fall into four general categories: (1) allegations that lack the requisite specificity; (2) allegations of misrepresentations on which Plaintiff did not rely and that pre-date Plaintiff's abuse; (3) allegations of inaction; and (4) allegations of concealment by others.  *See* Compl. ¶¶ 131–46.  None of those allegations is sufficient to plead fraudulent concealment.

1.   Plaintiff asserts—almost entirely without elaboration—that the University "made affirmative representations to Plaintiff" that purportedly fraudulently concealed his cause of action.  Compl. ¶ 131.  Allegations of fraud, however, must be pleaded with particularity.  *See* Fed. R. Civ. P. 9(b); *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 851 (6th Cir. 2006).  And with one exception discussed below, Plaintiff does not say *what* the supposed representations were—or who made them, when they were made, or how they were conveyed to Plaintiff.  *See,*

15

*e.g.*, Compl. ¶ 131.a-b (alleging that the University represented that Anderson's acts "were normal" without specifying who said that, when or where it was said, or how the alleged representation was made). Courts hold similar non-specific allegations insufficient under ordinary pleading standards, and all the more so under the heightened standard applicable to allegations sounding in fraud. *See, e.g.*, *Republic Bank*, 683 F.3d at 246–47; *see also Evans*, 434 F.3d at 851. Courts also disregard conclusory recitations of claim elements. *See* Compl. ¶¶ 132–37; *Iqbal*, 556 U.S. at 678. Plaintiff's fraudulent-concealment allegations fail to meet the applicable federal pleading standards.

2. The only affirmative act that Plaintiff pleads with any specificity is the issuance of a 1979–80 President's Report. *See* Compl. ¶¶ 131.a-b, 138.b. The statements in that Report do not to amount to fraudulent concealment for three reasons.

*First*, fraudulent concealment tolls a limitations period *only if the plaintiff* relies on the representations at issue. *See, e.g.*, *Archdiocese of Detroit,* 692 N.W.2d at 405. Plaintiff does not allege that he read the Report—which was issued years before he enrolled in the University—let alone how he relied on it. *See Johnson v. Johnson*, 2013 WL 2319473, at *2 (Mich. Ct. App. May 28, 2013) (It is "impossible for plaintiff to have acted in reliance upon defendant's representation" when plaintiff "was not even aware of the representation.").

*Second*, the 1979–80 Report predated Plaintiff's abuse. *Id.* ¶ 73 (alleging abuse between 1984 and 1989). But for a limitations period to be tolled, the concealing acts must take place "***after*** the alleged injury . . . because actions taken before the alleged injury would not have been capable of concealing causes of action that did not yet exist." *Archdiocese of Detroit*, 692 N.W.2d at 404; *see also Bishop Foley*, 2018 WL 2024589, at *6 ("We may only consider actions by defendants . . . that occurred after the alleged injury . . . ."); *accord, e.g.*, *Irrer v. Milacron, Inc.*, 2006 WL 2669197, at *9 (E.D. Mich. Sep. 18, 2006); *Beck v. Park W. Galleries*, 2016 WL 3653955, at *3 (Mich. Ct. App. July 7, 2016).

*Third*, the statements in the Report cannot plausibly be read to "conceal" anything about Anderson's abuse as to Plaintiff or to "mislead or hinder acquirement of information disclosing a right of action." *Archdiocese of Detroit*, 692 N.W.2d at 405. Its statements generally "thank" Anderson. Compl. ¶¶ 51–52. But the Report does not make any representations that could plausibly be understood to comment on, conceal, or endorse any "odd," "weird," or "uncomfortable" conduct by Anderson during exams. *See id.* ¶¶ 87, 104–05.

3.     The remaining acts that Plaintiff attributes to the University are not "affirmative." *See* Compl. ¶¶ 138.a, c-d, 141 (*e.g.*, "refused to terminate"; "ignored . . . and failed to inquire"; "did not create policy"). Fraudulent concealment requires affirmative acts of concealment; allegations of inaction are not enough.

*See Archdiocese of Detroit*, 692 N.W.2d at 405; *see also King-White*, 803 F.3d at 764 (rejecting fraudulent-concealment tolling because the "[p]laintiff's allegations focus[ed] on" the defendants' "failure to act"). Accordingly, Plaintiff's allegations regarding actions the University did *not* take cannot establish fraudulent concealment as a matter of law.

Plaintiff attempts to avoid the affirmative-act requirement by alleging that the University was his fiduciary. *See, e.g.*, Compl. ¶ 142. The University, to be sure, has an important and meaningful relationship with its students. But courts have concluded that for purposes of legal claims, "since the late 1970s, the general rule is that no special relationship exists between a college and its own students." *Freeman v. Busch*, 349 F.3d 582, 587 (8th Cir. 2003); *see also Bradshaw v. Rawlings*, 612 F.2d 135, 138–41 (3d Cir. 1979); *Valente v. Univ. of Dayton*, 438 F. App'x 381 (6th Cir. 2011); *Squeri v. Mount Ida Coll.*, 954 F.3d 56 (1st Cir. 2020). The University, accordingly, was not Plaintiff's fiduciary. Even if the law were otherwise, any fiduciary "relationship between the school[ ] and [its] students cease[s] at the very latest when the students le[ave] or graduate[ ]." *Twersky*, 993 F. Supp. 2d at 446; *see also, e.g.*, *Rotella v. Pederson*, 144 F.3d 892, 896–97 (5th Cir. 1998); *cf. Carpenter v. Mumby*, 273 N.W.2d 605, 611 (Mich. Ct. App. 1978) (limitations period begins to run on when the "fiduciary relationship ends"). As a result, any

fiduciary relationship between the University and Plaintiff—and, with it, any alleged concealment by inaction—would have ended in 1989.

4.    Plaintiff's final category of allegations of fraudulent concealment concern actions that Anderson himself—not the University—took to conceal his abuse.  Compl. ¶¶ 115–30.  But "concealment by one other than the one sought to be charged is not within the prohibition of the statute."  *Stoneman v. Collier*, 288 N.W.2d 405, 407 (Mich. Ct. App. 1979); *see also Chandler v. Wackenhut Corp.*, 465 F. App'x 425, 428 (6th Cir. 2012) (no imputation of concealment by employee to employer).  Anderson's own actions therefore cannot toll the statute of limitations with respect to claims against the University.

*    *    *

Michigan's fraudulent-concealment exception to the ordinary operation of statutes of limitation must be "strictly construe[d] and narrowly appl[ied]." *B&P Process*, 2015 WL 13660565, at *3.  Plaintiff's complaint fails to qualify for that exception as a matter of law.  Counts I-IV should be dismissed.

## B.    Plaintiff's Section 1983 claim is also barred by sovereign immunity.

"The [Eleventh] Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).  As a result, states and their instrumentalities are "immune from

suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). As Plaintiff recognizes, the University is "a public university . . . under the laws of the State of Michigan." Compl. ¶ 19. The Eleventh Amendment's sovereign immunity thus applies. *See Estate of Ritter by Ritter v. Univ. of Mich.*, 851 F.2d 846, 850 (6th Cir. 1988) (holding that, "as an arm of the state," the University is "immune under the Eleventh Amendment from suit in federal district court to recover retroactive monetary relief"); *accord, e.g.*, *Thomas v. Noder-Love*, 621 F. App'x 825, 831 (6th Cir. 2015). Because Section 1983 does not abrogate Eleventh Amendment immunity, *Noder-Love*, 621 F. App'x at 831, Counts II–IV should be dismissed.

## II.   THE UNIVERSITY OF MICHIGAN SHOULD BE DISMISSED.

If any of Plaintiff's claims survive dismissal, the "University of Michigan" should be dismissed as an improper defendant. The Board of Regents of the University of Michigan is the body corporate with the capacity to be sued under law. *See* Mich. Comp. Laws § 390.4; *see Ali v. Univ. of Michigan Health Sys.-Risk Mgmt.*, 2012 WL 3112419, at *3 (E.D. Mich. May 4, 2012) (noting that "the proper party" is the Board of Regents); *cf. Kreipke v. Wayne State Univ.*, 807 F.3d 768, 777 (6th Cir. 2015) (applying Wayne State's equivalent statutory framework). Therefore, the "University of Michigan" is not a proper defendant and should be dismissed.

## CONCLUSION

The University has great sympathy for what Plaintiff suffered. And the University is committed to developing a process to compensate him and other survivors of Anderson's abuse. But for the reasons stated above, Plaintiff cannot state a legal claim against the University. The University thus respectfully requests that the Court grant its motion and dismiss Plaintiff's complaint.

Respectfully submitted,

/s/ *Cheryl A. Bush*
Cheryl A. Bush (P37031)
Stephanie A. Douglas (P70272)
Derek J. Linkous (P82268)
Andrea S. Carone (P83995)
BUSH SEYFERTH PLLC
100 W. Big Beaver Rd., Ste. 400
Troy, MI 48084
(248) 822-7800
bush@bsplaw.com

*Attorneys for the University*

Dated: May 1, 2020

21