UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE MC-1,

     Plaintiff,

v.

THE UNIVERSITY OF MICHIGAN,
et al.,

     Defendants.

_____/

Case No. 20-10568
Honorable Victoria A. Roberts

REDACTED VERSION

**MASTER CASE FILING**

## ORDER: GRANTING IN PART AND DENYING IN PART PLAINTIFFS' JOINT MOTION FOR LEAVE TO ALLOW PLAINTIFFS TO DEPOSE DR. ANNA DAVOL AND DR. HAROLD SHAPIRO – AND FOR THE UNIVERSITY TO PRODUCE RELATED DOCUMENTS – PRIOR TO THE PARTIES' FED. R. CIV. P. 26(f) CONFERENCE

### I.    Introduction

Plaintiffs – hundreds of former University of Michigan (the "University") students and student-athletes – allege Robert Anderson, M.D. ("Anderson") sexually assaulted them during his tenure at Michigan.

The University employed Anderson as a physician from 1963 until 2003. Beginning in 1969, Anderson headed University Health Services ("UHS"), where he performed physicals and other medical examinations on students. After repeated complaints that Anderson was sexually assaulting male students during medical examinations, the University demoted

Anderson to "senior physician" in 1979, before moving him to the position of full-time Athletic Department physician in 1981. In both positions, Anderson saw and allegedly sexually assaulted students and student-athletes.

Before the Court is Plaintiffs' Motion for Leave to Allow Plaintiffs to Depose Dr. Anna Davol and Dr. Harold Shapiro – and for the University to Produce Related Documents – Prior to the Parties' Rule 26(f) Conference.

Although discovery is stayed, Plaintiffs request leave to depose two former high-ranking officials at the University whose tenures overlapped with Anderson's: (1) former Interim Director of UHS Dr. Anna Davol ("Davol"), now a resident of Massachusetts; and (2) former University President Dr. Harold Shapiro ("Shapiro"), who resides in New Jersey. Plaintiffs served subpoenas on Davol and Shapiro and believe that these former University senior officials have "unique knowledge" related to Plaintiffs' claims against the University. They are also elderly, and Plaintiffs believe that these circumstances combined satisfy the "exigent circumstances" exception to the discovery stay agreed to by the parties.

Plaintiffs also served a subpoena on the University to produce related documents located in the Bentley Historical Library – an arm of the University and campus archive of the University's history.

For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion.

The Court **GRANTS** Plaintiffs leave to depose Davol and Shapiro and finds: (1) the subpoenas are valid, except for where narrowed by the Court, and (2) Plaintiffs show sufficient exigent circumstances for the depositions to proceed prior to a Rule 26(f) conference.

However, the Court **DENIES** Plaintiffs' document request to the University; it is an improper document request to a party while discovery is stayed and Plaintiffs have not demonstrated exigent circumstances.

## A. Background

During pre-motion negotiations, the parties stipulated to a stay of discovery pending mediation. Specifically, in this Court's September 25, 2020 Stipulated Order Extending Stay of Discovery, the parties agreed that, except for the depositions of Mr. Henry Johnson and Mr. Charles Christian, "discovery shall remain stayed until any discovery issues are presented and resolved by the Mediator, Robert F. Riley, or further Order of this Court." [ECF No. 123]. The Order also states that, "with the approval of Mr. Riley, Plaintiffs or the University may file a motion to obtain limited discovery for an exigent circumstance unanticipated at this time." [ECF No. 123, PageID.2554].

The Court addressed this stay of discovery again on October 2, 2020 in its Order Concerning Pending Motions and Motion Practice [ECF No. 125]. It stated that all motion practice is ". . . STAY[ed] . . . unless the parties seek and obtain permission of the Court." [ECF No. 125, PageID.2597].

After the deposition of Henry Johnson, █████████████████

████████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████████████████

        █████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████

█████████



On August 30, 2021, Plaintiffs served subpoenas on Davol and Shapiro to produce documents and appear for depositions. [Plfs' Brief in Support, p. 5; Exhs. B & C]. They also subpoenaed the Bentley Historical Library to produce documents relevant to these witnesses' anticipated testimony and involvement with Dr. Anderson.

Both Davol and Shapiro voiced their objections to the subpoenas with Plaintiffs' counsel, but never filed objections with the Court until now.

## B. Procedural Errors

Both Plaintiffs and the third-party deponents made procedural errors related to the subpoenas.

Plaintiffs erred by serving subpoenas and seeking discovery before obtaining permission from the Court. [ECF No. 125, PageID.2597]. This error is moot given that Plaintiffs now seek leave to depose Davol and Shapiro.

Plaintiffs served these subpoenas under Fed. R. Civ. P. 45, which governs nonparty discovery. Rule 45(c) requires that compliance with subpoenas be enforced in the district court within 100 miles of where the parties subject to the subpoena reside. Fed. R. Civ. P. 45(c)(1)(A).

The Rule also states that "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this

rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f).

Exceptional circumstances may warrant transfer to "avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." *See* Advisory Committee Note to Rule 45(f). Transfer is proper if these "interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." *Id*.

Davol and Shapiro are out of state residents, so the Eastern District of Michigan is not the court where compliance is required to be enforced. However, if Plaintiffs had filed motions in the courts where compliance is required to be enforced under Rule 45(c), or if third party deponents had filed objections in those courts, the motions likely would have been transferred under Rule 45(f) to this Court. Neither party took steps under Rule 45 to enforce or quash the subpoenas.

Instead, Davol and Shapiro filed responses to Plaintiffs' motion, even though the Court did not request their responses. By doing so, they entered unconditional appearances in this Court, objected to the subpoenas, and raised arguments on the merits. Because of these filings,

Davol and Shapiro consented to this Court's jurisdiction over them and consented to this Court deciding the issues on the merits.

## II.    Document and Deposition Requests

### A. Validity of the Subpoenas

Davol and Shapiro claim that the subpoenas are procedurally defective because they were served before Plaintiffs sought leave from the Court. This is true; permission from the Court was required by this Court's Order Concerning Pending Motions and Motion Practice. [ECF No. 125]. However, this issue is moot, as already stated.

Davol also asserts that her subpoena fails to specify the issuing court and it required her attendance but was not accompanied by the required fees for attendance and mileage.

However, Plaintiffs filed the Davol deposition notice, which stated the name of the issuing court and that she was paid a witness fee. [*See* Plfs' Reply to Davol, Exh. A]. Although Davol sent written objections to the subpoena to Plaintiffs' counsel, she did not timely file objections in the district court where compliance is required to be enforced. Instead, Davol objected to the subpoena in this Court.

The Court finds that Davol's subpoena is not procedurally defective such that it is unenforceable.

However, Davol need not comply with certain document requests listed in the subpoena because they are overbroad. While Davol does not make an overbreadth argument, Shapiro does.

Both subpoenas include similarly overbroad requests for documents and the Court's ruling on overbreadth applies to both.

Shapiro correctly argues that "Plaintiffs have document requests spanning seven categories of information. Many of the categories are not limited in time and some are not even limited to the relevant conduct." [Shapiro's Reply Brief, p. 12].

These requests include: (1) Shapiro's calendars from his time as University President, and Davol's calendars related to her time as a staff physician and Interim Director of UHS; and (2) all documentation regarding Shapiro or Davol stored with the Bentley Historical Library. [Plfs' Brief in Support, Exhs. B & C].

Davol and Shapiro need not comply with these requests. Plaintiffs do not substantiate any exigency supporting these requests for such voluminous amounts of records not directly relevant to Anderson's conduct.

## B. Exigent Circumstances

Plaintiffs say that exigent circumstances warrant the preservation depositions of Davol and Shapiro because Davol is 78 years old; Shapiro is 86 years old; and they are the only two known living "witnesses to critical decisions, conversations and events that will decide not only the merits of the case, but salient evidence of [the University's] fraudulent concealment of its knowledge that Anderson was a sexual predator." [Plfs' Reply to Shapiro, p. 4].

This Court's Stipulated Order Extending Stay of Discovery allows the parties to seek discovery due to exigent circumstances. [ECF No. 123].

Discovery is stayed and the parties have not conferred as required by Fed. R. Civ. P. 26(f). A party seeking discovery in advance of a Rule 26(f) conference must show "good cause in order to justify deviation from the normal timing of discovery." Fed. R. Civ. P. 26(d); *Westfield Ins. Co. v. Pavex Corp.*, No. 17-14042, 2017 WL 6407459 (E.D. Mich. Dec. 15, 2017).

Generally, parties may only depose witnesses or request documents before completing a Rule 26(f) conference when it is authorized by "[rules of civil procedure], by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1).  Thus, under Rule 26(d)(1), a finding of exigent circumstances is sufficient to satisfy the "good cause" standard.

Exigent circumstances and/or "[g]ood cause may be found where plaintiff's need for expedited discovery outweighs the possible prejudice or hardship to the defendant." *In re Paradise Valley*, No. 03-34704, 2005 WL 3841866, at *2 (Bankr. E.D. Tenn. Dec. 29, 2005). "In each case, good cause is found [where there is] the urgency to . . . obtain evidence before it is lost." *Elektra Ent. Grp., Inc. v. Does 1-6*, No. 1:08-CV-444, 2009 WL 10679073, at *2 (S.D. Ohio Feb. 5, 2009). Such a showing requires litigants to establish that deponents have "unique personal knowledge of the relevant fact surrounding the case." *Lossia v. Detroit Bd. Of Educ.*, No 11-12607, 2012 WL 3587339, at *2 (E.D. Mich. Aug 20, 2012).

Shapiro and Davol deny having unique knowledge surrounding the events that led to this litigation, and they both argue that evidence of advanced age alone is not sufficient to show good cause and/or exigent circumstances.

### 1. <u>Davol</u>

Davol incorrectly cites to three cases for the proposition that her age alone cannot serve as an exigent circumstance.

Her reliance on *United States v. Int'l Longshoremen's Ass'n*, No. CV-05-3212, 2007 WL 2782761 (E.D. N.Y. Sept. 24, 2007), is misguided. The court in that case declined to grant an early deposition of an 83-year-old

defendant because plaintiff failed to guide the court regarding the essential evidence and its other sources. *Id*. Unlike that case, Plaintiffs state specifically what the essential evidence is that needs to be preserved and that Davol and Shapiro are likely its only sources.

Davol also cites to *Ash v. Court*, 512 F.2d 909, 913 (3d Cir. 1975). In that case, plaintiff made no attempt to show why evidence would be lost without the depositions; he stated only that the 50-year-old witnesses may die or their memories may fade. The court held that the witnesses' ages alone were not sufficient to show why testimony was needed to avoid loss of evidence while appeal was pending.

*Ash* is distinguishable; Plaintiffs in this case allege that Davol and Shapiro are the only two living witnesses who can testify regarding the relevant conduct. Further, while Davol and Shapiro do not have serious medical problems, their advanced ages are more probative of the risk of loss than the 50-year-old witnesses in *Ash*.

Finally, in *McNulty v. Reddy Ice Holdings, Inc*., No. 08-CV-13179, 2010 WL 3834634 at *3-4 (E.D. Mich. Sept. 27, 2010), the court granted the deposition and stated that deponent's serious medical problems were more significant than his age (74). *McNulty* implies that evidence of serious medical problems is more significant than age, but it does not foreclose the

possibility of finding exigent circumstances to depose an elderly witness who has unique knowledge and no medical problems.

"[ A deponent's] advanced age presents a significant risk that he [or she] will be unavailable to testify by the time of trial." *Penn Mutual Life Ins. Co. v. United States*, 68 F.3d 1371, 1375 (D.C. Cir. 1995). "It would be ignoring the facts of life to say that a 71-year-old witness will be available to give his deposition or testimony at an undeterminable future date." *Texaco, Inc. v. Borda*, 383 F.2d 607, 609 (3rd Cir. 1967) (internal quotations omitted).

The cases relied on by Davol, Shapiro and the University suggest that age alone is not sufficient to show exigent circumstances. But Plaintiffs do not rely on age alone to establish exigency. They claim that Davol has unique knowledge regarding: (1) "UM's termination of Anderson for sexually abusing students in 1979"; (2) Anderson's subsequent reinstatement to UHS as a "senior physician" working for Davol; and (3) "Anderson's 1980 sexual assault of Keith Moree, a gay activist student who sent a written complaint to Davol detailing the abuse." [Plfs' Reply Brief to Davol, p. 2].

Davol says she has no information regarding Anderson's sexual abuse or his termination as Director of UHS. But she has not made any

statements under oath denying that she has knowledge. Davol worked for Anderson before his demotion from his position as Director of UHS, and she replaced him when she became Interim Director of UHS. Throughout that entire time period, Plaintiffs allege that Anderson sexually abused students. Keith Moree's complaint was filed directly with Davol. She was in a position to be privy to many of the details related to Anderson's sexual abuse of students and his termination.

Plaintiffs allege that Davol stated in her interview with Detective West that Anderson worked for her after he was no longer the Director of UHS and that she thought it was "an easy way to let him down" from the directorship. This suggests that she had information regarding Anderson's termination as Director. [Plfs' Brief in Support, Exh. U].

Davol also allegedly told Detective West that an agreement for Anderson to continue working as a physician at UHS was made by University Vice President Henry Johnson (allegedly denied by Johnson under oath). [Plfs' Brief in Support, Exh. U].

Henry Johnson was a senior administrator at the University during Anderson's tenure, and Plaintiffs allege that Davol, Anderson and Johnson had a working relationship. [Plfs' Brief in Support, p. vii]. Because Davol knew of the alleged agreement made by Johnson for Anderson to continue

working in UHS, Plaintiffs believe her testimony is critical to proving

Johnson's knowledge of Anderson's relevant conduct.

Plaintiffs also seek Davol's testimony to establish whether Johnson

knew that Anderson had been terminated, and whether he knew that

Anderson remained employed at the University after the accusations.

Davol's reply brief includes a chart with references to exhibits

submitted by Plaintiffs. She claims that these exhibits establish that there

are other sources for the evidence Plaintiffs seek:

- Exhibit S: Letter from Dr. Anderson to Henry Johnson states: "the title of Director of Athletic Medicine which you gave me in announcing my resignation from the Directorship is meaningless."

- Exhibit Q: Memorandum authored by Henry Johnson stating, "Dr. Robert Anderson will step down as Director effective January 15, 1980. He will assume Senior Physician states at ½ time (50%)."

- Exhibit K: Administration Department document and note: "A Student Services Appointment Change Request" form dated August 13, 1979, and signed by Easthope, crossed out Anderson's title of "Director of University Health Services" and replaced it with a handwritten title of "Senior Physician, Health Services." The document also showed a reduction in salary, effective January 14, 1980, from $53,220 to $46,000.

- Exhibit L: Notification of Open Position Form, effective January 14, 1980, stating that Anderson was "demoted."

- Exhibit T: Davol's Statement to Detective West, "Dr. Davol said that she had never heard anything bad said about Dr. Anderson."

[Davol's Reply Brief, p. 6-7].

The exhibits establish only that: (1) Henry Johnson may have played a role in Anderson's resignation and continued employment at the University after he was accused of sexual abuse; (2) Johnson knew Anderson had not left the University to go into private practice; and (3) Anderson continued to work at the University after he was accused of sexually abusing students.

The exhibits do not establish that Davol had no knowledge of Anderson's conduct, termination, or subsequent reinstatement. And they do not establish that she lacked understanding of Johnson's knowledge regarding these events.

Davol is one of two surviving senior administrators of the University during the Anderson era. She was both Anderson's subordinate and his supervisor when he was accused of sexual abuse.

The Court finds that exigent circumstances and/or good cause exist for Davol's deposition based on her advanced age and her unique knowledge. If she cannot recall key information during the deposition, her

16

memory can be refreshed; lack of recollection is not the same as lack of knowledge.

### 2. **Shapiro**

Shapiro denies having unique personal knowledge, but he has not made his denials under oath. He furnished no affidavit in support of his reply brief.

Plaintiffs say that he is the only known living former University President during an eight-year period when Anderson had access to students and is the only living former President who was at the University during the same time as Anderson. Plaintiffs say he can provide unique information regarding: (1) the University's termination of Anderson for allegedly sexually abusing students in 1979; and (2) Anderson's subsequent reinstatement at UHS as "senior physician" working at UHS and "Head of Athletic Medicine" at the Athletic Department. [Plfs' Reply to Shapiro, p. 4].

They believe that Shapiro "likely knew of the underlying circumstances of Anderson's termination given his position as the highest senior administrator in UHS and the egregiousness of Anderson's conduct." [Plfs' Reply to Shapiro, p. 2]. Henry Johnson authored a memorandum to

Shapiro informing him of Anderson's demotion and reduction in work time. [Plfs' Brief in Support, Exh. Q].

Shortly after Anderson's termination, Shapiro issued a memo to the deans, directors, and department heads re-stating the University's policy on sexual harassment of employees and students and reiterating how complaints of sexual harassment should be handled. [Plfs' Reply to Shapiro, Exh. A, Shapiro Departmental Memo on Sexual Harassment]. In 1987, Johnson wrote a memo to Shapiro describing the University process for handling, investigating, and acting on complaints of sexual harassment as "not objective, efficient or fair." [Plfs' Reply to Shapiro, Exh. B, Johnson Memo to Shapiro of Sexual Harassment].

Shapiro's testimony will allow Plaintiffs to learn any unique knowledge Shapiro has of Anderson's alleged sexual abuse of students and his knowledge of the University's internal policies and procedures in reporting sexual misconduct of senior administrators. As University President during Anderson's tenure, Shapiro likely has knowledge of the relevant facts surrounding the case. His knowledge and advanced age constitute exigent circumstances and/or good cause for his deposition.

For these reasons, the Court **GRANTS** Plaintiffs' request for leave to depose Dr. Anna Davol and Dr. Harold Shapiro.

Shapiro and Davol must comply with the subpoenas by sitting for the depositions and fulfilling, to the best of their ability, Plaintiffs' document requests not declared overbroad by this order.

As to Shapiro's request that his deposition be conducted virtually, the Court finds this reasonable. Both Shapiro's and Davol's depositions should be virtual unless otherwise agreed by the parties. However, the Court overrules Shapiro's request to limit his deposition to two hours.

## III.   The University Agreed to Discovery Exceptions Due to Exigent Circumstances

The University argues that the Court must address its motion to dismiss, including its sovereign immunity and statute of limitations defenses, before ordering discovery. The University claims, "the court may not order discovery before addressing an immunity defense." [University Reply Brief, p. 5] (citing *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004); *Kolley v. Adult Protective Servs.*, 725 F.3d 581, 587 (6th Cir. 2013); and *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Until this threshold question of immunity is resolved, discovery should not be allowed")).

But the University's arguments ignore the realities of this case. Since the outset of this litigation, the University has maintained the position that it wants to mediate both claims and defenses, instead of litigating them – including its sovereign immunity and statute of limitations defense. The

19

Court ordered that litigation activity on the University's motion to dismiss cease without exception while mediation is ongoing. [ECF No. 125]. It did so with the parties' blessing. The parties also agreed to the possibility of some exception to the discovery stay due to exigent circumstances. [ECF No. 123].

Mediation is ongoing before Mr. Riley, and the Court believes that allowing limited discovery that was stipulated to under the parties' agreement neither undermines nor justifies ending mediation discussions. The University knows that it has preserved all its defenses – including sovereign immunity and statute of limitations.  It knows, too, that it may settle these cases without ever litigating sovereign immunity or the statute of limitations. The University's motion to dismiss on sovereign immunity or statute of limitations grounds is preserved if mediation fails.

## IV.    Subpoena to University Not Appropriate

Plaintiffs issued subpoenas to the Bentley Historical Library under Fed. R. Civ. P. 45. The University correctly points out that Rule 45 subpoenas are properly served upon a third party and the University is a party to this case. Fed. R. Civ. P. 45. Document requests from a party are governed by Rule 34, and Plaintiffs must show exigent circumstances and

obtain leave from the Court to issue pre-discovery subpoenas to the University under that rule.

The Court **DENIES** Plaintiffs' request for leave to seek documents from the Bentley Historical Library.

## V.    Conclusion

Plaintiffs' Motion for Leave to Depose Dr. Anna Davol and Dr. Harold Shapiro—And For the University to Produce Related Documents Prior to the Parties Fed. R. Civ. P. 26(f) Conference is **GRANTED IN PART** and **DENIED IN PART**:

(1) Plaintiffs' request to depose Davol and Shapiro is **GRANTED**;

(2) Except for the overbroad requests for documents—as set forth on pages nine—Plaintiffs' subpoenas to depose, and for documents from Shapiro and Davol are valid, and Shapiro and Davol's objections are overruled; and

(3) Plaintiffs' requests for documents from the University (i.e., the Bentley Historical Library) is **DENIED**.

**IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  November 2, 2021