# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| John Doe MC-1,<br><br>       Plaintiff,<br>v.<br><br>The University of Michigan, the Regents of The University of Michigan,<br><br><br>       Defendants. | Case No. 2:20-cv-10568-VAR-EAS<br><br>Hon. Victoria A. Roberts<br>Magistrate Judge Elizabeth A. Stafford<br><br>**Master Case Filing** |

## UNOPPOSED MOTION TO APPOINT ARCHER SYSTEMS, LLC AS LIEN ADMINISTRATOR AND BANKRUPTCY COORDINATION ADMINISTRATOR AND [PROPOSED] ORDER

Plaintiffs' Co-Leadership Counsel, on behalf of the Settling Plaintiffs, move for this Court to appoint ARCHER Systems, LLC ("ARCHER") as Lien Administrator and Bankruptcy Coordination Administrator for the Settlement resolving all actions, claims, causes of action, or allegations that have been asserted or could be asserted by the 1,080 Settling Claimants against the UM Defendants. In support of this Motion, counsel submits the attached Memorandum in Support and Proposed Order.

                                                                Respectfully submitted,

Dated: August 2, 2022                        By: */s/ Richard W. Schulte*

                                                                Richard W. Schulte (OH # 0066031)

1

Wright & Schulte, LLC
865 S. Dixie Dr.
Vandalia, OH 45377
(937) 435-7500
rschulte@yourlegalhelp.com

*/s/ Manvir S. Grewal Sr.*
Manvir S. Grewal Sr. (P48082)
Grewal Law PLLC
2290 Science Parkway
Okemos, MI 48864
(517) 393-3000
mgrewal@4grewal.com
*/s/ Michael A. Cox*
Michael A. Cox (P43039)
The Mike Cox Law Firm, PLLC
17430 Laurel Park Drive North
Suite 120 E
Livonia, MI  48154
734-591-4002
mc@mikecoxlaw.com
*/s/ Stephen Drew*
Stephen Drew (P24323)
Drew, Cooper and Anding
Aldrich Place, Suite 200
80 Ottawa Ave. NW
Grand Rapids, MI 49503
616-454-8300
sdrew@dca-lawyers.com
**Co-leadership Counsel**

August 2, 2022

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| John Doe MC-1,<br><br>    Plaintiff,<br>v.<br><br>The University of Michigan, the Regents of The University of Michigan,<br><br><br>    Defendants. | Case No. 2:20-cv-10568-VAR-EAS<br><br>Hon. Victoria A. Roberts<br>Magistrate Judge Elizabeth A. Stafford<br><br>**Master Case Filing** |

## MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION TO APPOINT ARCHER SYSTEMS, LLC AS LIEN RESOLUTION AND BANKRUPTCY COORDINATION ADMINISTRATOR

In Support of its Motion, Plaintiffs Co-Leadership Counsel, submit that appointment of ARCHER Systems, LLC ("ARCHER") as Lien Administrator and Bankruptcy Coordination Administrator will aid in the efficient administration of settlement resolving all actions, claims, causes of action, or allegations that have been asserted or could be asserted by the 1,080 Settling Claimants against Defendants, The University of Michigan and the Board of Regents of the University of Michigan (the "UM Defendants").

Plaintiffs Co-Lead Counsel selected ARCHER as the Lien Administrator and the Bankruptcy Coordination Administrator to be responsible for the resolution of Healthcare Liens and Bankruptcy Coordination, under the Parties' Private

1

Master Settlement Agreement ("MSA"). ARCHER has the qualifications and experience necessary to accomplish its duties as Lien Administrator and Bankruptcy Coordination Administrator.

### I. Lien Administrator

In support of this Motion, Plaintiffs Co-Leadership Counsel proffer that ARCHER is qualified to the be the Lien Administrator. Lien resolution is a complex and demanding condition to settlement, requiring specialized expertise to identify reimbursement obligations and facilitate timely resolution. Each year, ARCHER resolves thousands of healthcare lien obligations for firms and companies across the country. ARCHER's lien resolution programs have been utilized in a broad variety of national mass tort, multi-district litigation, and class action matters.

Undertaking these transactions requires ARCHER to coordinate with Governmental Payors and representatives for Medicare (Parts A & B), Medicare Part C, Medicaid, and Other Governmental Interest Programs, (including, but not limited to Veterans Affairs, Tricare, Indian Affairs, FEHBA), payors, and providers and their respective recovery contractors. ARCHER has strong and established workflow procedures with each of these entities. Consequently, ARCHER is well qualified to serve as the Lien Administrator for the Claimants in the UM Settlement. Accordingly, Plaintiffs' Co-Leadership Counsel

respectfully request, as to the appointment of the Lien Administrator, that the Court enter an order that:

    A.  Appointing ARCHER as the Lien Administrator on behalf of 1,080 Settling Claimants against the UM Defendants;

    B.  ARCHER is qualified to be Lien Administrator for the UM Settlement,

    C.  Authorizes ARCHER to meet and confer with Defendants, at Defendants' request, to discuss the coordination of mandatory insurer reporting requirements under Section 111 of the MMSEA and any other government regulation or law;

    D.  Granting ARCHER, as the Lien Administrator, the authority to establish such other processes, programs, procedures, and protocols as are necessary or convenient, in ARCHER's reasonable discretion, to ensure that the Lien Resolution Program is utilized by all Settling Claimants, with which all attorneys who are representing such Claimants must comply;

    E.  Granting ARCHER, as the Lien Administrator, the authority to receive and release protected health information and individually identifiable health information, to act as agent for the Settling Claimants for purposes of resolution of potential healthcare obligations in accordance

      with its duties and authority above, and to perform the other functions in accordance with its duties and authority above; and

F.   Granting ARCHER, as the Lien Administrator, authority to use all information related to Settling Claimants that the Lien Administrator creates, provides to, or receives from CMS, TRICARE, or any other governmental agency that is or may be protected under HIPAA and its amendments, or other applicable federal or state law, including all Protected Health Information, as defined in 45 C.F.R. §160.103.

**II.**   **Bankruptcy Coordination Administrator**

ARCHER is well qualified to serve as the Bankruptcy Coordination Administrator for the Claimants in the UM Settlement, having been responsible for resolving bankruptcy issues in numerous mass tort and class action settlements. ARCHER, has established a process, which includes notice to the U.S. bankruptcy trustee (where a Chapter 7 or 13 plan has been administered, a bankruptcy discharge granted, and the bankruptcy estate closed), and working closely with Plaintiffs' Counsel to identify those Settling Plaintiffs with a bankruptcy issue through PACER research, case classification, notice to the U.S. bankruptcy trustees, and where appropriate, preparation or review of pleadings to be filed before the relevant bankruptcy courts to address the issues prior to any distribution being made from the UM Settlement Fund to the impacted Claimant(s).

Specifically, as Bankruptcy Coordination Administrator, ARCHER will carry out the following duties:

A. Report all flagged bankruptcy cases that arise from the PACER search to the UM Defendants;

B. Investigate and help resolve all flagged bankruptcy cases that arise from the PACER search;

C. When a bankruptcy case is flagged, contact the bankruptcy trustee or U.S. Trustee to determine if the award is an asset of the bankruptcy estate; contact debtor's bankruptcy attorney for open bankruptcy cases; assist with coordination upon the reopening of the case, review or prepare drafts to employ Special Counsel, and coordinate to obtain settlement approval from the bankruptcy court, if necessary;

D. Ensure proper payment of settlement proceeds through any Bankruptcy Claimant's bankruptcy estate and/or coordinating exemptions or trustee abandonments, when applicable;

E. Coordinate with Individual Plaintiff's Counsel of any debtor Plaintiff with a bankruptcy issue; and

F. Perform other bankruptcy coordination and reporting duties as required by the Parties Private Master Settlement Agreement ("MSA").

Accordingly, Plaintiffs' Co-Leadership Counsel respectfully request, as to the appointment of the Bankruptcy Coordination Administrator, that the Court enter an order:

A. Appointing ARCHER as the Bankruptcy Coordination Administrator on behalf of 1,080 Settling Claimants against the UM Defendants;

B. ARCHER is qualified to be Bankruptcy Coordination Administrator for the UM Settlement, with the duties and responsibility to identify, resolve, and coordinate with the QSF Co-Administrators[1] to ensure proper payment for satisfaction of all Bankruptcy issues before funds are released from the QSF to a given Bankruptcy Claimant, and Plaintiffs' Counsel further agree that the Bankruptcy Coordination Administrator shall have such duties. Such responsibilities of the Bankruptcy Coordination Administrator shall include, but not be limited to: identifying all Bankruptcy Claimants, including by conducting a PACER search using key identifiers for each Claimant to identify any bankruptcy petitions filed in the federal court system; after such searches, reporting to Plaintiffs' Counsel and the UM Defendants which Claimants are Bankruptcy Claimants; and taking all

---

[1] In the immediate future, Plaintiffs' Co-Leadership Counsel intends to file an Unopposed Motion before the Court to Appoint QSF Co-Administrators.

reasonable steps to resolve each Bankruptcy Claimant's Bankruptcy issues.

C. In the event that the Bankruptcy Coordination Administrator is unable to resolve a Bankruptcy Claimant's Bankruptcy issues by obtaining either (i) a written representation and warranty from a duly authorized bankruptcy trustee or U.S. trustee on behalf of or with respect to the Bankruptcy Claimant's bankruptcy estate that either (x) the Bankruptcy Claimant's bankruptcy estate has no interest in the Bankruptcy Claimant's Action, Anderson-Related Claim, and Allocated Share, or (y) that the Bankruptcy Claimant's bankruptcy estate is, pursuant section 544 of the Bankruptcy Code, abandoning the Bankruptcy Claimant's Action, Anderson-Related Claim, and Allocated Share to the Bankruptcy Claimant, (in which case the Bankruptcy Claimant shall subsequently ratify their earlier-executed Settlement Release and provide the ratification to the Lien Administrator); or (ii) a Settlement Release or substantially similar document executed by the applicable bankruptcy trustee on behalf of or with respect to the Bankruptcy Claimant's bankruptcy estate, and approved by a United States bankruptcy court, ratifying the Bankruptcy Claimant's previously signed Settlement Release and

7

forever releasing the UM Released Persons from all Anderson-Related Claims and any Bankruptcy Complications with respect to both the Bankruptcy Claimant and the Bankruptcy Claimant's bankruptcy estate, as if the Bankruptcy Claimant's originally executed Settlement Release had been fully executed and/or approved by the applicable bankruptcy trustee and approved by a United States bankruptcy court at the time the Bankruptcy Claimant originally executed his, her, or its Settlement Release within twelve (12) months of the payment of the Settlement Amount, then: the Bankruptcy Coordination Administrator shall provide to the UM Defendants copies of at least two written communications (no less than two months apart) from the Bankruptcy Coordination Administrator to both the applicable bankruptcy trustee and the Office of the United States Trustee for the District in which the bankruptcy occurred providing notice of the Bankruptcy Claimant's Action, Anderson-Related Claim, and Allocated Share, and certify that the Bankruptcy Coordination Administrator received no response to such communications;

D. Upon the UM Defendants' receipt of those two written communications referenced in Paragraph C and the certification that the Bankruptcy Coordination Administrator received no response to

8

the communications, the QSF Co-Administrators may distribute to the Bankruptcy Claimant that individual Bankruptcy Claimant's Allocated Share, less a "Bankruptcy Holdback Amount," defined as the greater of (a) 40% of that individual Bankruptcy Claimant's Allocated Share or (b) the total amount of debt that was discharged in that individual Bankruptcy Claimant's bankruptcy proceedings; and shall continue to hold in escrow that individual Bankruptcy Claimant's Bankruptcy Holdback Amount.

E. If the Bankruptcy Coordination Administrator is unable to resolve a Bankruptcy Claimant's Bankruptcy Complications within eighteen (18) months of the payment of the Settlement Amount, then: the Bankruptcy Coordination Administrator shall provide to the UM Defendants copies of at least one additional written communication from the Bankruptcy Coordination Administrator to both the applicable bankruptcy trustee and the Office of the United States Trustee for the District in which the bankruptcy occurred providing notice of the Bankruptcy Claimant's Action, Anderson-Related Claim, and Allocated Share, and certify that the Bankruptcy Coordination Administrator received no response to such communications; upon the UM Defendants' receipt of that additional communication and the

9

certification that the Bankruptcy Coordination Administrator received no response to the communication, the QSF Co-Administrators may distribute to the Bankruptcy Claimant 90% of that individual Bankruptcy Claimant's Allocated Share; and shall continue to hold in escrow 10% of that individual Bankruptcy Claimant's Allocated Share. If the Bankruptcy Coordination Administrator is unable to resolve a Bankruptcy Claimant's Bankruptcy Complications within twenty-four (24) months of the payment of the Settlement Amount, then: the Bankruptcy Coordination Administrator shall provide to the UM Defendants copies of at least one additional written communication from the Bankruptcy Coordination Administrator to both the applicable bankruptcy trustee and the Office of the United States Trustee for the District in which the bankruptcy occurred providing notice of the Bankruptcy Claimant's Action, Anderson-Related Claim, and Allocated Share, and certify that the Bankruptcy Coordination Administrator received no response to such communications; upon the UM Defendants' receipt of that additional communication and the certification that the Bankruptcy Coordination Administrator received no response to the communication, the QSF Co-Administrators may distribute to the Bankruptcy Claimant the

remaining 10% of that Bankruptcy Claimant's Allocated Share. In all events, each individual Bankruptcy Claimant's executed Settlement Release shall remain fully binding and enforceable.

F. In lieu of the procedure outlined C-E, the UM Defendants, in their sole discretion, may accept a proposal by Plaintiffs' Co-Lead Counsel, through insurance or an indemnity agreement by ARCHER, to indemnify and hold harmless the UM Defendants from liability for any claim related to a Bankruptcy Complication.

As to appointment of ARCHER as both the Lien Administrator and Bankruptcy Coordination Administrator, Plaintiffs Co-Leadership Counsel further request that the Court's order include the following:

A. Within 90 days from the payment of the Settlement Amount, and on a monthly basis thereafter, ARCHER will provide to the UM Defendants an audit report that will identify and report on the status of, with respect to each Claimant, all Lien Complications and Bankruptcy Complications; or alternatively, affirmatively state that such Lien Complications and Bankruptcy Complications, do not exist or have been resolved, as a prerequisite to such Claimant receiving an Allocated Share.

B. Without in any way limiting the qualifications and duties of the QSF Co-Administrators, the Lien Administrator, or the Bankruptcy Coordination

Administrator, the QSF Co-Administrators, the Lien Administrator, and the Bankruptcy Coordination Administrator shall, work with each other and Individual Plaintiff's Counsel to address any Complications relating to an Action, Anderson-Related Claim, Settled Claim, Settlement Release, or Allocated Share, including but not limited to: (i) the Lien Administrator's identification, resolution, payment, and/or satisfaction of any Lien Complications; (ii) the Bankruptcy Coordination Administrator's performance of a bankruptcy analysis and resolution procedure to identify and resolve any Bankruptcy Complications; and (iii) the QSF Co-Administrators' payment of applicable bankruptcy and/or other interests as directed by Individual Plaintiff's Counsel for the Claimants they represent in connection with resolution of the Bankruptcy Coordination Administrator in connection with resolution of Bankruptcy Complications. As part of its duties, the QSF Co-Administrators, the Bankruptcy Coordination Administrator, and the Lien Administrator shall be entitled to hire agents or third parties to assist with their respective duties, including attorneys who specialize in lien and/or bankruptcy matters, with the fees and costs for such agents or third parties deemed part of the administration of the Qualified Settlement Fund; provided, however, that the QSF Co-Administrators, the Bankruptcy Coordination Administrator, and/or the Lien Administrator shall

supervise and remain responsible for the work of any agents or third parties that they hire.

Therefore, Plaintiffs' Co-Leadership Counsel respectfully request the Court Appoint ARCHER as Lien Administrator and Bankruptcy Coordination Administrator to carry out the duties and responsibilities as outlined herein.

Respectfully submitted,

Dated: August 2, 2022   By:   /s/ Richard. W. Schulte

Richard W. Schulte (OH # 0066031)
Wright & Schulte, LLC
865 S. Dixie Dr.
Vandalia, OH 45377
(937) 435-7500
rschulte@yourlegalhelp.com

/s/ Manvir S. Grewal Sr.
Manvir S. Grewal Sr. (P48082)
Grewal Law PLLC
2290 Science Parkway
Okemos, MI 48864
(517) 393-3000
mgrewal@4grewal.com

/s/ Michael A. Cox
Michael A. Cox (P43039)
The Mike Cox Law Firm, PLLC
17430 Laurel Park Drive North
Suite 120 E
Livonia, MI 48154
734-591-4002
mc@mikecoxlaw.com

/s/ Stephen Drew
Stephen Drew (P24323)
Drew, Cooper and Anding

13

Aldrich Place, Suite 200
80 Ottawa Ave. NW
Grand Rapids, MI 49503
616-454-8300
sdrew@dca-lawyers.com
***Co-leadership Counsel***

August 2, 2022